CITIZENS STATE BANK OF WITTENBERG, Valders State Bank, Bank of Spring Green, The Farmers State Bank of Waupaca, Cedarburg State Bank, Bank of Mauston, Waukesha State Bank, and The Northwestern Bank (Chippewa Falls), Wisconsin banking corporations, and The First National Bank of Eagle River, The Union National Bank of Ashland, and The First National Bank of Rhinelander, national banking associations, and The WBA Pension Plans of the Above-Named Banks, Allen M. Voelz, an individual, The M. & I. Marshall & Ilsley Bank, a Wisconsin banking corporation, The First Wisconsin Trust Company, a Wisconsin banking corporation, and The Marine Trust Company, N.A., a national banking association, Plaintiffs,

v.

CONTINENTAL ASSURANCE COMPANY, a.k.a. CNA Insurance Companies, Defendant.

No. 84–C–362–D.

United States District Court,
W.D. Wisconsin.

Dec. 14, 1984.

**1112**

Michael P. May of Boardman, Suhr, Curry & Field, Madison, Wis., for plaintiffs.

Linda M. Clifford of La Follette, Sinykin, Anderson & Munson, Madison, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

The second cause of action in the complaint alleges: Plaintiff employers established pension plans for the benefit of their employees. The plans were established through agreements among plaintiff employers, plaintiff trustees, and defendant insurance company. Under the plans and agreements, the future pension plans were to be funded in part by the establishment of an investment fund. In this respect, the agreement offered by defendant was a "security," within the meaning of the Securities Act of 1933 ("the Act"). Defendant made representations and omissions of fact which were false, fraudulent, deceptive and misleading, in violation of § 17(a) of the Act, 15 U.S.C. § 77q (hereinafter, "17(a)").

Defendant has moved to dismiss the second cause of action under Fed.R.Civ.P. 12(b)(1) or (6), on the ground that § 17(a) does not provide a private right of action for damages. Unless subject matter jurisdiction is present, I cannot reach the question whether the second cause of action states a claim upon which relief can be granted. Accordingly, I turn to defendant's 12(b)(1) motion. Only if it is denied can I address its 12(b)(6) motion. However, for either purpose, I look to only the allegations of the complaint.

To this date the United States Supreme Court has reserved ruling whether § 17(a) implies a private right of action.[1] *Herman & Maclean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979). The circuit courts of appeals are divided. *See Kimmel v. Peterson*, 565 F.Supp. 476, 482 n. 6 (E.D.Pa.1983) and cases cited therein.

The Seventh Circuit Court of Appeals has recently commented: "Whether Section 17(a) can be enforced by private damage suits is an open question in this circuit ...." *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins.*, 698 F.2d 320, 323 (7th Cir.1983). In *Peoria*, the court deemed this "not a terribly important" question, noting that Rule 10b–5 can be enforced by a private damage action, and that "10b–5 tracks § 17(a) closely." *Id.*[2] The court reversed a district court decision which had held that the pension plan at issue was not a security, that plaintiffs were barred by a statute of limitations, and that plaintiffs' complaint

---

**1.** Section 17(a) provides:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact neces-

sary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

**2.** SEC Rule 10–b5, 17 C.F.R. § 240.10b–5, was promulgated under the Securities Exchange Act of 1934, *see* 15 U.S.C. § 78j(b).

was not pleaded with sufficient particularity. *Id.* at 324–328.

Prior to *Peoria* the court had held in *Daniel v. Inter. Broth. of Tmstrs, Chauf., Etc.,* 561 F.2d 1223, 1244–46 (7th Cir.1977), *rev'd on other grounds sub nom., Inter. Broth. of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), that § 17(a) did create a private right of action. In *Daniel,* however, the court had "proceed[ed] on the assumption that the operative provisions of the antifraud sections of the 1933 and 1934 Acts are identical ...." 561 F.2d at 1245.[3] Defendants in *Daniel* did not contest the § 17(a) issue.

Subsequent to the Seventh Circuit's decision in *Daniel,* and prior to its decision in *Peoria,* the United States Supreme Court had distinguished the kind of proof necessary to establish a violation of § 17(a) of the 1933 Act from that required under § 10(b) of the 1934 Act and Rule 10b–5. In *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 695–97, 100 S.Ct. 1945, 1954–56, 64 L.Ed.2d 611 (1980), the Court held "that the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)." *Id.* at 697, 100 S.Ct. at 1956.[4] The Court had previously limited the reach of § 10(b) and Rule 10b–5 by requiring that a plaintiff prove scienter. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976).

I inquire first whether I should address and decide the question whether § 17(a) does or does not imply a private right of action for damages. Defendant argues that *Peoria* renders the question open in this circuit and that I should address it fully and decide it. Plaintiffs argue that *Peoria* renders the question open only in a case in which a § 17(a) claim is pleaded singly, uncoupled to a Rule 10b–5 claim. I understand plaintiffs to argue that in cases like *Peoria* itself, *Daniel* before it, and

now this present case, in which a § 17(a) claim and a Rule 10b–5 claim are coupled, the question is not open. Rather, it is closed in this circuit, closed in favor of the existence of an implied private right of action under § 17(a). Thus, while plaintiffs agree I should address the question and decide it in their favor, they mean address it not freshly and fully but in the course of recognizing the controlling force of appellate precedent in this circuit.

I am disposed to read "open question in this circuit," as the words appear in *Peoria,* as more liberating than plaintiff suggests. In part, I am so disposed because in the earlier cases like *Daniel,* the court of appeals had itself addressed the issue only provisionally. First, it had accepted the premise that § 17(a) afforded would-be plaintiffs an opportunity for success no broader than that afforded by Rule 10b–5 and, second, it had been aware that § 10(b) and Rule 10b–5 do give rise to private rights of action. Therefore, it had considered it unnecessary to address seriously the availability or nonavailability of a private right of action under § 17(a). While ambiguity has its charms, it may never have been the wiser course to leave uncertain whether a judgment for a successful private plaintiff rested only on § 10(b) and Rule 10b–5, only on § 17(a), or on both. Nevertheless, there is some merit to a suggestion that a trial court should emulate the manner in which the appellate court behaves as well as obey its direct and substantive holdings.

Even if I were otherwise disposed to continue in the paths of ambiguity, however, the effect of the 1980 decision of the Supreme Court in *Aaron* must be measured. *Aaron* undercut the earlier assumption of the court of appeals for the seventh circuit that the opportunity for success for a private party on a § 17(a) claim, if a

---

**3.** In *Peoria* and in *Daniel,* the complaints included a claim based on § 17(a), and also a claim based on Rule 10b–5.

**4.** Although *Aaron* involved a civil enforcement action by the SEC, there is no basis in the

Court's analysis of the statutory language for distinguishing, in terms of proofs required of plaintiffs, between SEC actions and private actions. *See Hudson v. Capital Management Intern., Inc.,* 565 F.Supp. 615, 626 (N.D.Cal.1983).

private right of action should exist, would be no broader than the established opportunity on a § 10(b) and Rule 10b–5 claim. Some § 17(a) claims may no longer be considered "slender enough to remain in the shadow of ... § 10(b) claims." *Roskos v. Shearson/American Express, Inc.,* 589 F.Supp. 627 at p. 629 (E.D.Wis.1984). We know now that practical consequences may flow from the presentation of a § 17(a) claim even when coupled with a § 10b–5 claim.

I understand plaintiff to argue that in the wake of *Aaron,* the issue may yet be avoided when the § 17(a) claim presented in a particular lawsuit in tandem with a § 10(b) and Rule 10b–5 claim is strictly a § 17(a)(1) claim, as contrasted with a § 17(a)(2) or (3) claim, because *Aaron* expands the opportunity for success on § 17(a) claims beyond the opportunity on § 10(b) and Rule 10b–5 claims only when the § 17(a) claims rest in subsections (2) and (3) of § 17(a). Plaintiff does not appear to suggest, and such a suggestion would surely fail in any event, that § 17(a) may be dissected as among its three subsections for the purpose of determining whether Congress implied the existence of a private right of action under one or two but not three of the subsections. Rather, the argument seems to be that it continues to be unnecessary to confront fully the question whether an implied private right of action exists under § 17(a), when the case at hand combines a claim strictly confined to § 17(a)(1), coupled with a claim under § 10(b) and Rule 10b–5.

I would not be persuaded by such exquisite refinement even if it were true that the present case combines a strictly § 17(a)(1) claim with a § 10(b) and Rule 10b–5 claim. But the second cause of action presently under consideration is not so confined. It cites § 17(a) generally and its language, including the language it incorporates by reference, does not track the language of § 17(a)(1) alone, as distinct from the language of § 17(a)(2) or (3). If plaintiff is allowed to proceed to trial on its second cause of action and the evidence proves arguably sufficient to support a verdict for

plaintiff under § 17(a)(2) or (3) but not under § 17(a)(1), much time and effort will have been expended for the sake of avoiding careful inquiry now into the presence or absence of subject matter jurisdiction under § 17(a). Rather than risk such costs of continued ambiguity and equivocation, I will decide whether § 17(a) implies a private right of action.

In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), the Court stated the factors to consider when deciding questions of statutorily implied private rights of action. Those criteria were summarized in *Bassler v. Central Nat. Bank of Chicago,* 715 F.2d 308, 310 (7th Cir. 1983):

(1) whether the plaintiff is a member of the class for whose "especial benefit" the statute was passed; (2) whether there is any indication of legislative intent, explicit or implicit, either to create a private right of action or to deny one; (3) whether a private right is consistent with underlying purposes of the legislative scheme; and (4) whether the claim is one traditionally assigned to state law so that it would be inappropriate to infer a claim based on federal law.

In *Allison v. Liberty Savings,* 695 F.2d 1086, 1088 (7th Cir.1982), the court observed that legislative intent is key:

The Court has since explained and clarified the test's application. All four factors are not equally weighted; the central inquiry is whether Congress intended to create a private right of action. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979). If Congress has indicated its intent, either expressly or by implication, the court's inquiry ends without consideration of the remaining *Cort* factors.

Similarly, in *Bassler,* the court observed "that the *Cort* mode is but one of several permissible approaches to ascertainment of that intent." 715 F.2d at 310.

When the House Committee report listed those sections of the Securities Act of 1933 that create and define civil liability, it identified only sections 11 and 12, adding that "[t]o impose a greater responsibility ... would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public." H.R.Rep. No. 85, 73rd Cong., 1st Sess. 9–10 (1933). This piece of legislative history has been frequently cited by courts which have considered the § 17(a) private remedy question. *See Landry v. All American Assurance Co.*, 688 F.2d 381, 389 and n. 34 (5th Cir.1982); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867 (2nd Cir.1968) (Friendly, J., concurring), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *Kimmel v. Peterson*, 565 F.Supp. at 486; *Basile v. Merrill Lynch, Pierce, Fenner, & Smith*, 551 F.Supp. 580, 586 (S.D.Ohio 1982); *Reid v. Mann*, 381 F.Supp. 525, 526 (N.D.Ill.1974). These courts have concluded uniformly that Congress did not intend a private right of action under § 17(a).

Further evidence of Congress' intention in enacting § 17(a) appears in a memorandum explaining an amendment offered by Senator Fletcher to Title II of the Securities and Exchange Act of 1934, which was an amendment to the Securities Act of 1933. Senator Fletcher proposed that § 17(a) be amended to require compliance with certain registration provisions by groups purporting to act on behalf of stockholders. The explanatory memorandum ends with the following statement: "It is to be noted that enforcement of the provisions of the new subsection is left to injunction, stop order, and criminal prosecution. No civil liability attaches for any violation thereof." 78 Cong.Rec. 8711–12 (1934). The Fletcher amendment was not included in the bill which emerged from the Senate-House Conference. However, the portion of the explanatory memorandum I have quoted is cited in Ruder, *Civil Liability under Rule 10b–5: Judicial Revision of Legislative Intent?* 57 Nw.U.L.Rev. 627, 656–57 (1963), where it is noted that Fletcher was well acquainted with the regulatory

provisions of the 1934 Act and the 1933 Act. Other scholars and participants have concluded that Congress intended that only the SEC enforce § 17(a), using it as a basis for injunctive or criminal liability, and that § 17(a) not supplement the actions for damages provided by §§ 11 and 12 of the 1933 Act. *See* L. Loss, *Fundamentals of Securities Regulation* 1148 (1983); Landis, *Liability Sections of the Securities Act*, 18 Am.Acct. 330, 331 (1933); Douglas and Bates, *Federal Securities Act of 1933*, 43 Yale L.J. 171, 181–82 (1933).

The context of the entire securities law scheme reinforces such a view. I have referred, for example, to the securities regulatory framework when discussing the practical significance of the § 17(a) private remedy issue given the differences in proof required to substantiate § 17(a)(2) and (3) claims versus a § 10(b) claim. Also, certain procedural safeguards attend lawsuits filed under §§ 11 and 12 but not those filed under § 17(a). "To permit a private right of action under § 17(a) would cause the statutory and judicially-crafted restrictions on § 10(b) of the 1934 Act and §§ 11 and 12 of the 1933 Act to atrophy and fall away as securities fraud cases hustled in the back door of § 17." *Roskos*, at p. 631. *See Landry*, 688 F.2d at 390, and *Kimmel*, 565 F.Supp. at 487.

■ I conclude there is no indication of legislative intent, explicit or implicit, to create a private right of action under § 17(a). Every indication points to the conclusion that there is no implied private remedy. In the absence of the existence of such a remedy, subject matter jurisdiction of this action is lacking.

## ORDER

Defendants' motion to dismiss plaintiffs' second cause of action, pursuant to Fed.R. Civ.P. § 12(b)(1), is granted. I refrain from directing entry of judgment, presently, dismissing the second cause of action. Fed.R. Civ.P. 54(b).