**Margaret DALE, Plaintiff,**

v.

**PRUDENTIAL–BACHE SECURITIES INC. and James B. Flanagan, Defendants.**

No. CV 88–3520.

United States District Court,
E.D. New York.

Aug. 25, 1989.

Keiffer & Hahn by Michael C. Devine, New York City, for plaintiff.

Miller & Wrubel by Joel M. Miller, New York City, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Margaret Dale ("Dale") commenced this action against Prudential–Bache Securities Inc. ("Prudential–Bache") and James B. Flanagan, a Prudential–Bache account executive, ("Flanagan") alleging various Federal Securities and common law violations. Specifically, plaintiff alleges violations of: (1) Section 17(a) of The Securities Act of 1933, 15 U.S.C. § 77q(a) ("Section 17(a)"); (2) Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"); (3) Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ("Section 20(a)"); (4) Rule 405 of the New York Stock Exchange ("Rule 405") and (5) common law

fraud, misrepresentation, breach of agreement, and breach of fiduciary duty.

Presently before the Court are defendants' motions to dismiss plaintiff's claims. Defendants seek dismissal of the causes of action based upon Section 17(a) and Rule 405 on the ground that these provisions do not provide for a private right of action. The remaining securities and common law claims are sought to be dismissed on the ground that they are subject to arbitration. If the securities claims are not deemed subject to arbitration, defendants seek dismissal on the alternative ground that plaintiff has failed to plead fraud with the requisite particularity.

For the reasons that follow, the Section 17(a) and Rule 405 claims are dismissed for lack of private rights of action. The common law claims are dismissed because they are arbitrable. Although the Court holds that the remaining securities claims are not arbitrable, the Court holds that these claims must be dismissed because they have not been pled with the requisite particularity. Plaintiff is given leave, however, to replead these securities claims within twenty days of the date of this order.

## BACKGROUND

Plaintiff's husband died in October, 1985. Prior to his death Mr. Dale had a broker-age account with defendant Prudential–Bache. Shortly after her husband's death plaintiff met with defendant Flanagan to discuss the status of her late husband's account. The accounts were put in plaintiff's name and documents evidencing this transaction were executed by plaintiff. Among the documents executed is a margin account agreement containing an arbitration clause. Plaintiff's present lawsuit arises out of the alleged mismanagement of the accounts covered by this margin agreement.

According to plaintiff, Flanagan, on behalf of Prudential–Bache, allegedly agreed to recommend securities that were "stable, income-paying investments with a low degree of risk." Plaintiff alleges Flanagan's statements were false and made with "in-

tent to defraud" or "with reckless disregard for the consequences of his acts." In addition, plaintiff alleges defendants "churned the account and recommended and purchased high risk securities which were not suitable for plaintiff." As a result, plaintiff alleges losses of $150,000 and punitive damages in the same amount. Moreover, plaintiff claims that Prudential–Bache failed to properly supervise Flanagan and "engaged in a deceptive course of dealing to defraud plaintiff" who was "incapable of comprehending" the confirmation and account statement sent to her.

Plaintiff argues that defendants' handling of her accounts violated the securities statutes referred to above as well as the common law. As noted above, defendants attack the sufficiency of plaintiff's complaint on several grounds. Each ground is discussed below.

## DISCUSSION

### I. SECTION 17 OF THE SECURITIES ACT OF 1933

■ Defendants attack plaintiff's Section 17(a) claim on the theory that no private right of action exists under this section. The Second Circuit Court of Appeals held, in a case decided in 1978, that a private right of action is available under section 17(a). *See Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). Although the Supreme Court has reserved decision on the availability of a private right of action under section 17(a), *see Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983), this Court holds, for the reasons set forth below, that *Kirshner* has lost its vitality and should no longer be applied in this Circuit.

Generally, Section 17(a) makes it unlawful for sellers of securities to engage in fraudulent transactions or to omit to state material facts. Section 17(a)(1) refers to an unlawful "device, scheme, or artifice to defraud." 15 U.S.C. § 77q(a)(1). Section 17(a)(2) makes it unlawful to "obtain money or property" by means of a misleading

statement of material fact. 15 U.S.C. § 77q(a)(2). Finally, Section 17(a)(3) states that it is unlawful to engage in business transactions that would "operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a)(3).

The Second Circuit Court of Appeals, relying on the assumption that the elements of a Section 17(a) private cause of action are identical to the elements of the well-established private remedy under Section 10(b), held that Section 17(a) affords a private cause of action. *See Kirshner*, 603 F.2d at 241.

Developments in Supreme Court decisions strongly suggest that *Kirshner* is no longer binding precedent. First, *Kirshner* rests on the assumption that the elements of a private action under Section 17 are identical to the elements essential to prove a violation of Section 10(b). *See id.* In *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980), however, the Supreme Court held that while scienter must be proven under Section 10(b) and Section 17(a)(1), a showing of negligence is sufficient to prevail in an action brought pursuant to either Section 17(a)(2) or Section 17(a)(3). *See Aaron*, 446 U.S. at 695–96, 100 S.Ct. at 1955. Accordingly, the elements of proving a violation under Section 17 and under Section 10(b) have been shown to differ.

Second, and perhaps more importantly, Section 17 is completely silent on the issue of private remedies. When the Second Circuit decided *Kirshner*, the question of whether a private remedy could be inferred from a *silent* congressional statute was determined solely by considering the factors set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). There the Supreme Court established a four-pronged test for determining the establishment of a private remedy. However, in *Touche–Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) the Supreme Court severely restricted judicial creation of private remedies from silent statutes

and stated that of the four *Cort v. Ash* factors none is nearly important as that of legislative intent. *See Touche Ross*, 442 U.S. at 575–576, 99 S.Ct. at 2488–89; *Transamerica Mortgage Advisors, Inc.*, 444 U.S. at 23–24, 100 S.Ct. at 249.

The clarification of the elements necessary to establish a Section 17 violation and the Supreme Court's stricter interpretation of silent statutes severely undercut the Second Circuit's holding in *Kirshner*. Indeed, in *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir. 1985), the Second Circuit itself questioned whether *Kirshner* was correctly decided. *Yoder*, 751 F.2d at 559 n. 3. *See also Zerman v. Ball*, 735 F.2d 15, 23 (2d Cir. 1984) (declining to decide whether a private right of action exists under Section 17). Based upon the developments in the law, this Court concludes that it is free to examine the question of the availability of a private right of action under Section 17(a).

Having decided that *Kirshner* is no longer binding precedent, this Court has little difficulty agreeing with the overwhelming majority of district courts in this circuit when concluding that Section 17 does not allow private remedies. *See, e.g., D'Addio v. L.F. Rothschild Inc.*, 697 F.Supp. 698, 701 (S.D.N.Y.1988); *Bruce v. Martin*, 691 F.Supp. 716, 725–26 (S.D.N.Y.1988); *The Limited v. McCrory Corp.*, 683 F.Supp. 387, 396 (S.D.N.Y.1988).

Three reasons support this Court's decision to side with the majority in holding that Section 17 does not afford a private remedy. First, now that a mere showing of negligence sufficiently establishes a Section 17(a)(2) or Section 17(a)(3) violation, while a violation of Section 10(b) requires a showing of fraud, *see Aaron*, 446 U.S. at 695–96, 100 S.Ct. at 1955, the creation of a private remedy under Section 17 becomes undesirable because such action would vitiate the limitations Congress so carefully placed on Section 10(b). *See The Limited, Inc.*, 683 F.Supp. at 396.

Second, the fact that the Securities Act of 1933 (the "1933 Act") expressly creates civil liabilities for the protection of purchasers supports the notion that no additional private remedies are to be implied. Specifically, Section 11 prohibits falsehoods and omissions in a registration statement and Section 12(2) protects purchasers from misstatements or omissions in oral communications. Since these two provisions create private remedies for securities purchasers, the overwhelming majority of courts examining the legislative history of the 1933 Act conclude that Congress intended Sections 11 and 12 to be the only civil liability provisions of the statute. *See, e.g., The Limited*, 683 F.Supp. at 396; *accord Landry v. All American Assurance Co.*, 688 F.2d 381, 389–390 (5th Cir.1982); *Citizens State Bank of Wittenberg v. Continental Assurance Co.*, 598 F.Supp. 1111, 1115 (W.D.Wis. 1984).

Finally, before a plaintiff can file a private lawsuit under Sections 11 and 12, strict procedural requirements must be satisfied. Section 17(a)(2) prohibits almost exactly the same conduct as Sections 11 and 12, but possesses none of their limitations. Thus, the creation of a private remedy under Section 17 would frustrate the framework of the private remedial provisions of the 1933 Act. *See The Limited*, 683 F.Supp. at 396.

For the foregoing reasons, the Court concludes that Section 17 does not afford a private remedy. Therefore, plaintiff's claim pursuant to Section 17 is dismissed.

## II. VIOLATION OF NEW YORK STOCK EXCHANGE RULE 405

■ Plaintiff contends that Prudential-Bache violated New York Stock Exchange Rule 405 ("Rule 405"). Rule 405 is a securities industry rule intended to increase the awareness of the obligations of the broker-dealer and is sometimes referred to as the "know your customer rule." Defendants attack plaintiff's Rule 405 claim on the ground that no private right of action under the Rule.

Although the Second Circuit has yet to rule on the availability of a private right of action under Rule 405, "the more recent and persuasive trend is that no private right of action exists for alleged violations of [the Rule]." *Frota v. Prudential-*

*Bache Securities, Inc.,* 639 F.Supp. 1186, 1190 (S.D.N.Y.1986).

In deciding that there is no private right of action in these cases, many courts look to the discussion of the issue set forth in *Colman v. D.H. Blair & Co., Inc.,* 521 F.Supp. 646 (S.D.N.Y.1981). *See, e.g., Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186, 1190 (S.D.N.Y.1986); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391, 1394 (S.D.N.Y.1986); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1569 (E.D.N.Y.1985); *Klock v. Lehman Bros. Kuhn Loeb, Inc.,* 584 F.Supp. 210, 217 (S.D.N.Y.1984); *Jaksich v. Thompson McKinnon Securities, Inc.,* 582 F.Supp. 485, 499 (S.D.N.Y.1984). When faced with the question of whether a private right of action exists under Rule 405, the *Colman* court applied the four factors set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Thus, the *Colman* Court considered the following questions:

1. Is the plaintiff one of the class for whose especial benefit the statute was enacted?

2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

3. Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 650 (quoting *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088).

When applying the four factor test pronounced in *Cort* to the case at hand, this Court, like the *Colman* Court, concludes that Congress did not intend to permit private rights of action for a violation of Rule 405. The rules of the New York Stock Exchange "neither mention private remedies nor confer any rights or prohibit any conduct by member organizations." *Jaksich,* 582 F.Supp. at 499. The same can be said about "[t]he legislative history of ... the statutes on which [these rules] are grounded." *Id.*

As noted in this Court's discussion of the Section 17 issue, the Supreme Court has held, in similar situations, against creating a private right of action for statutes that omit doing so explicitly. *See Touche Ross & Co.,* 422 U.S. at 575–76, 99 S.Ct. at 2488–89; *Transamerica Mortgage Advisors, Inc.,* 444 U.S. at 23–24, 100 S.Ct. at 249. In those cases the Supreme Court noted that the most important factor to be considered was whether Congress intended to create a private right of action. Here, there is simply no such evidence.

As the *Colman* Court noted "[w]here there is no evidence of congressional intent to create a private right of action, the inquiry is ended and analysis of the remaining factors is unnecessary." *Colman,* 521 F.Supp. at 651. The Court thus concludes that no private right of action exists under Rule 405. Accordingly, plaintiff's claim pursuant to Rule 405 is dismissed.

## III. ARBITRABILITY

As noted above, the documents executed by plaintiff contain an arbitration clause. The clause covers "any controversy arising out of or relating to [plaintiff's] account." Plaintiff objects to the enforceability of the arbitration clause on several grounds. Specifically, plaintiff argues: (1) that enforcement of the arbitration clause is unconscionable; (2) that the arbitration clause lacks mutual assent; (3) that the arbitration clause is unenforceable because the contract was not delivered; (4) that the scope of the arbitration clause does not cover the present dispute and (5) that the arbitration clause is unenforceable because it lacks mutuality of obligation. After addressing each argument, the Court will consider the question of whether the arbitration clauses apply to the state as well as the federal claims.

### A. *Unconscionability*

■ Plaintiff argues that it would be unconscionable to enforce the arbitration agreement because she lacked the ability to

understand the agreements and the arbitration provision contained therein.

Even if plaintiff's alleged misunderstanding would void the agreement, a claim of fraudulent inducement, duress or unconscionability involves the formation of the entire contract and must be determined by the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987). Since the alleged unconscionability is an issue for the arbitrator, the Court cannot refuse to compel arbitration on this ground.

#### B. *Mutual Assent*

■ Plaintiff claims that she never specifically agreed to arbitrate and thus the agreement lacks mutual assent. Plaintiff's argument is wholly unconvincing. A court's focus is "not on whether there was subjective agreement as to each clause in the contract but whether there was an objective agreement with respect to the entire contract." *Genesco, Inc. v. Kakiuchi & Co. Ltd.*, 815 F.2d 840, 846 (2d Cir.1987); *Bigge Crane & Rigging Co. v. Docutel Corporation*, 371 F.Supp. 240, 243 (E.D.N.Y.1973).

It is well settled that one who signs a contract, in the absence of fraud or misconduct, is conclusively presumed to know its contents and assents to them. *McMahon v. Shearson American Express, Inc.*, 618 F.Supp. 384, 386 (S.D.N.Y.1985), *aff'd in part and rev'd in part on other grounds*, 788 F.2d 94 (2d Cir.1986), *rev'd on other grounds*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Fustok v. Conticommodity Services, Inc.*, 577 F.Supp. 852, 856 (S.D.N.Y.1984). As noted above, any claim of fraudulent inducement to enter the contract is properly addressed by the arbitrator. Accordingly, plaintiff's argument that she never specifically agreed to arbitrate does not constitute a ground on which to refuse to compel arbitration.

#### C. *Delivery of the Contract*

■ Plaintiff further contends that the agreements she signed are not binding because they were never delivered to her. This argument is also without merit.

A binding contract may be made without physical delivery of the instrument evidencing the contract. *Armour & Company v. Celic*, 294 F.2d 432, 435 (2d Cir.1961); *Bohlen Industries v. Flint Oil & Gas, Inc.*, 106 A.D.2d 909, 483 N.Y.S.2d 529, 530 (4th Dep't 1984). It is only when the parties agree that delivery is essential to the making of the contract that there is no agreement without it. *Bohlen Industries*, 483 N.Y.S.2d at 530. In this case there is no indication that the parties intended to establish delivery as a condition precedent to the effectiveness of the contract. Thus, the Court must reject the argument that delivery is essential to enforcement of the arbitration clause.

#### D. *Scope of the Arbitration Clause*

■ Plaintiff claims that the arbitration clause applies only to Prudential–Bache and that she is therefore free to litigate her claims against Flanagan.

The arbitration provision provides that "[a]ny controversy arising out of or relating to [plaintiff's] account ... shall be settled by arbitration." Plaintiff's claims against Flanagan relate to the alleged mismanagement of her account. As such, those claims fall squarely within the scope of the arbitration provision. Where, as here, plaintiff's claims fall within the scope of an arbitration clause, courts have held that the arbitration provision applies to account executives as well as the brokerage firms they represent. *See, e.g., Brener v. Becker Paribas Inc.*, 628 F.Supp. 442, 451 (S.D.N.Y.1985).

That neither Flanagan nor Prudential–Bache signed the agreement does not alter this result. It is well established that the absence of a party's signature does not invalidate an otherwise binding agreement to arbitrate. *See, e.g., Genesco*, 815 F.2d at 846.

#### E. *Mutuality of Obligation*

■ Plaintiff argues that the arbitration provision is invalid because it is not mutual-

ly binding on Prudential–Bache. This argument, like those discussed above, is without merit.

Mutuality of obligation does not mean equality of obligation, it simply means that each party must be bound to some extent. *Dorman v. Cohen,* 66 A.D.2d 411, 413 N.Y. S.2d 377, 380 (1st Dep't 1979). It has been held that an arbitration provision does not lack mutuality where both parties to the contract are required to arbitrate any dispute arising between them. *See, e.g., Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067 (2d Cir.1972); *see also Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 538 N.Y.S.2d 513, 516, 535 N.E.2d 643, 646 (1989) (if consideration exists for entire contract mutuality of remedy not required in agreement to arbitrate).

Since the arbitration clause states that "[a]ny controversy arising or relating to [plaintiff's] account … shall be settled by arbitration," it is clear that the parties exchanged binding promises to submit all controversies to arbitration. Accordingly, the arbitration agreement does not fail for lack of mutual assent.

## IV. ARBITRABILITY OF STATE LAW CLAIMS

In *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the United States Supreme Court held that the Federal Arbitration Act "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly ineffective maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc.,* 470 U.S. at 218, 105 S.Ct. at 1241. The Court further observed that the Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. *Id.*" (emphasis added). In light of this clear precedent the Court holds that plaintiff's state law breach of the agreement, breach of fiduciary duty, fraud, misrepre-

sentation and deceit must be arbitrated. *See NPS Communications, Inc. v. Continental Group, Inc.,* 760 F.2d 463 (2d Cir. 1985); *Rush v. Oppenheimer & Co.,* 779 F.2d 885 (2d Cir.1985).

## V. ARBITRABILITY OF THE FEDERAL CLAIMS

As noted above, the margin account agreement provides that any controversy "arising out of or relating to plaintiff's account or transactions in the account" shall be submitted to arbitration. The agreement also contains a provision notifying plaintiff that as a "public customer" she is entitled to sue in court as to "any controversy for which a remedy may exist pursuant to an express or implied right of action under the federal securities laws." Relying on the plain language of this clause, plaintiff argues that claims brought pursuant to the Federal Securities Laws should not be sent to arbitration.

According to defendant, the language exempting securities claims from the scope of the arbitration agreement was made a part of the arbitration clause for the sole purpose of complying with Rule 15c2–2 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.15c2–2(a)(1987) ("Rule 15c2–2"). Defendant argues that since the SEC recently rescinded Rule 15c2–2, the language excluding securities claims from the scope of the arbitration clause should have no effect. For the reasons set forth below, this Court disagrees.

SEC Rule 15c2–2 was adopted after the Supreme Court decided *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). There, the Court held that disputes arising under the Securities Act of 1933 were not subject to arbitration. As originally promulgated Rule 15c2–2 stated that:

It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal Securities laws, or to have in effect such an agreement, pursuant to

which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2(a) (1987).

The Supreme Court's decision in *Shearson/American Express v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) led to the rescission of Rule 15c2–2. There the Supreme Court held that disputes arising under the Securities Exchange Act of 1934 were, indeed, arbitrable. In *Rodriguez DeQuijas v. Shearson/American Express, Inc.,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), the Supreme Court expressly overruled *Wilko. See id.* 109 S.Ct. at 1922. Thus, it is now clear that all claims arising under the federal securities laws are arbitrable.

The effect of arbitration clauses drafted in compliance with the now-rescinded Rule 15c2–2 has been the subject of several recent cases. Although the Court of Appeals for the Second Circuit has yet to rule on this issue, district courts within this Circuit have decided the issue as have other circuit courts of appeal.

Defendants find support for their position in cases holding that language exempting federal securities claims from the scope of arbitration agreements was inserted for the sole purpose of complying with Rule 15c2–2. These cases refuse to construe the language as a substantive term of the contract but, instead, construe the term as a "notice" provision advising investors of the federal law then in existence. Since the language is construed as a mere notice provision, courts reason that the rescission of Rule 15c2–2 leaves the limiting language of the arbitration clause with no effect. *See, e.g., McCowan v. Dean Witter Reynolds, Inc.,* 682 F.Supp. 741, 743 (S.D.N.Y. 1987); *DeKuyper v. A.G. Edwards & Sons, Inc.,* 695 F.Supp. 1367, 1368–69 (D.Conn. 1987); *Finkle & Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505, 1510 (S.D.N.Y. 1985).

Those Courts holding the exemption from arbitration valid do so on the theory that the plain language of the parties' agreement compels such a conclusion. Most recently in *Ballay v. Legg Mason Walker, Inc.,* 878 F.2d 729, Fed.Sec.L.Rep. (CCH) ¶ 94,449 (3d Cir. June 29, 1989), the Court of Appeals for the Third Circuit rejected the notice argument advanced by defendants here. Holding the exclusionary language binding, despite the rescission of Rule 15c2–2, the Court noted that the language was "unequivocal" and a customer reading the language "could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law." Concluding that the securities claims were not arbitrable, the Court pointed out that defendant could not be relieved from the agreement simply by arguing that it did not mean what it said. *Accord Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848 F.2d 130, 133 (9th Cir. 1988) (holding exclusionary language in an arbitration Agreement binding despite the rescission of Rule 15c2–2).

A similar conclusion was reached in *Brick v. Bradford & Co., Inc.,* 677 F.Supp. 1251 (D.D.C.1987). There, the arbitration clause at issue contained the same language as the clause at issue here. Relying on familiar principles of contract law the District Court for the District of Columbia refused to send the securities claims to arbitration. Specifically, the Court held that evidence of the parties' intentions is relevant to contract interpretation only if the language at issue is ambiguous. *See Brick,* 677 F.Supp. at 1254 (relying on *Breed v. Insurance Co. of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1283 (1978)). Finding that the language at issue "could not more clearly exclude federal securities laws claims from arbitration," the Court refused to look beyond the plain language of the contract and, therefore, rejected defendant's notice agreement. *Brick,* 677 F.Supp. at 1256.

This Court, like the *Brick* Court, finds no ambiguity in the arbitration clause and therefore refuses to look behind the plain language of the contract to discern its meaning. The language at issue clearly exempts federal securities claims from the scope of the arbitration clause. If defendants meant for the exemption to become

meaningless in the event of the rescission of Rule 15c2-2, appropriate language could have been used. In the absence of such language plaintiff had no way of knowing of any hidden meaning behind the words of the contract and was entitled to rely upon the contract's plain language. In sum, the Court holds that the exclusionary language of the arbitration clause must be given its plain meaning. Accordingly, the federal securities claims are not subject to arbitration. *Accord Church v. Gruntal & Co., Inc.,* 698 F.Supp. 465, 468–69 (S.D.N.Y. 1988); *Federal Insurance Co. v. Mallardi,* 696 F.Supp. 875, 879 (S.D.N.Y.1988).

## VI. COMPLIANCE WITH RULE 9(b)

Having decided that plaintiff's remaining federal securities are not arbitrable the Court turns to defendants' alternative argument. Namely, whether the remaining claims must be dismissed for failure to plead fraud with the requisite particularity.

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)"), an exception to the liberal pleading rules of the Federal Rules of Civil Procedure, requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). It is well established that a claim of securities fraud must satisfy the requirements of Rule 9(b). *See, e.g., Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114–15 (2d Cir.1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Allegations of fraud sufficient to comply with Rule 9(b) must set forth matters such as the time, place, speaker and contents of the alleged misrepresentations. *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). Compliance with Rule 9(b) is essential to give defendants notice of exactly what they are charged with and to enable them to prepare an adequate defense. *See Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978); *Moran v. Kidder, Peabody & Co.,* 609 F.Supp. 661, 664 (S.D.N.Y. 1985), *aff'd mem.,* 788 F.2d 3 (1986).

Plaintiff's complaint falls short of meeting the requirements of Rule 9(b).

Plaintiff complains of fraudulent misstatements, churning, unsuitability and unauthorized trading of the securities recommended. To properly state such claims plaintiff must, as noted above, specify the exact statements made as well as the time and place that the alleged misrepresentations were made. The claim of churning should "identify the securities involved and should contain a statement of facts which is sufficient to, at the very least, permit a rough ascertainment of either the turnover ratio or the percentage of the account value paid in commissions." *D'Addio v. L.F. Rothschold Inc.,* 697 F.Supp. 698, 703 (S.D. N.Y.1988). Similarly, plaintiff's claims of unsuitability and unauthorized trading must specify the securities purchased and why the trades were unauthorized. *See Fein v. Shearson Hayden Stone, Inc.,* 461 F.Supp. 137, 142 (S.D.N.Y.1978).

Plaintiff's allegations plainly fall short of the requirements of Rule 9(b). In the absence of a viable claim of fraud, plaintiff also fails to state a claim against Prudential Bache under § 20(a) or the common law doctrine of *respondeat superior. See Baum v. Phillips Appel & Walden, Inc.,* 648 F.Supp. 1518, 1532–33 (S.D.N.Y.1986), *aff'd,* 867 F.2d 776 (2d Cir.1989).

Although plaintiff's securities claims must be dismissed for failure to plead fraud with the requisite particularity, outright dismissal of the complaint is not warranted. Failure to comply with Rule 9(b) ordinarily results in an order that plaintiff amend the complaint so as to conform with the Rule. *Luce,* 802 F.2d at 56–57. Accordingly, plaintiff is granted leave to amend the complaint to comply with Rule 9(b). An appropriate amended complaint must be served within twenty days of the date of this order.

## CONCLUSION

Plaintiff's claims under section 17(a) of the Securities Act of 1933 and Rule 405 of the New York Stock Exchange are dismissed. Defendants' motion to compel arbitration of plaintiff's state law claims of fraud, misrepresentation, breach of agreement, breach of fiduciary duty and deceit is

granted. Although plaintiff's Section 10(b) and Section 20(a) federal securities fraud claims are not arbitrable they are dismissed with leave to replead the insufficient allegations by service of an appropriate amended complaint within twenty days of this memorandum and order.

SO ORDERED.