11 F.3d 865
 62 USLW 2372, Fed. Sec. L. Rep. P 97,820
 In re VERIFONE SECURITIES LITIGATION.
Martin HALKIN; Michael Minichino; Lois Steen; Richard
Marchesi; David J. Steinberg; Chaille Steinberg,
Plaintiffs-Appellants,
v.
VERIFONE INC.; Robertson Stephens, Robertson Stephens and
Company, Defendants-Appellees.
Martin HALKIN; Michael Minichino; Lois Steen; Richard
Marchesi; David J. Steinberg; Chaille Steinberg,
Plaintiffs-Appellants,
v.
VERIFONE INC.; William F. Gorog; John R.C. Porter; Keith
B. Greeslin; H.H. Haight, IV; William N. Melton; Frank J.
Caufield; Hatim A. Tyabji; Morgan Stanley & Co.;
Robertson Stephens; Dean Witter Reynolds Incorporated;
Burton McMurtry, Defendants-Appellees.
 Nos. 92-15156, 92-15378.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1993.
Decided Nov. 17, 1993.
 
 Solomon B. Cera, David B. Gold, A Professional Law Corp., San Francisco, CA, for plaintiffs-appellants.
 John N. Hauser, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for defendants-appellees Morgan Stanley & Co., Inc., Robertson, Stephens & Co., and Dean Witter Reynolds Inc.
 Melvin R. Goldman, Paul T. Friedman, Jordan Eth, Morrison & Foerster, San Francisco, CA, for defendants-appellees VeriFone, Inc., et al.
 Appeal from the United States District Court for the Northern District of California.
 Before: REINHARDT, TROTT, and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 Purchasers of allegedly overpriced shares of VeriFone, Inc. common stock ("shareholders") appeal the district court's dismissal of their securities fraud class action with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). In re VeriFone Sec. Litig., 784 F.Supp. 1471 (N.D.Cal.1992). After a drop in the trading price of VeriFone stock, shareholders brought suit against VeriFone, certain of VeriFone's senior officers and directors (collectively "VeriFone"), and Morgan Stanley & Co., Robertson, Stephens & Co., Dean Witter Reynolds, Inc., and other underwriters of the March 13, 1990 initial public offering of VeriFone common stock (collectively the "Underwriters"). Shareholders generally allege that VeriFone and its Underwriters failed to disclose projected or potential changes in VeriFone's product market in the prospectus and registration statement, subsequent SEC filings, news releases, and stock analysts' reports issued by Morgan Stanley and Dean Witter. We conclude that the allegations made in this case amount to no more than a failure to disclose forecasts, and as such, are not actionable. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 * VeriFone, Inc. is a supplier of transaction automation systems, used to automate a variety of payment and benefits transfer transactions. On March 13, 1990, VeriFone filed with the SEC a registration statement and prospectus for an initial public offering ("IPO") of 3,900,000 shares of common stock priced at $16.00 per share. Morgan Stanley, Dean Witter, and Robertson, Stephens served as co-lead underwriters for the IPO.
 
 
 3
 The price of VeriFone's common stock increased on the first day of public trading, closing at $19 1/4. The stock price continued to rise through the beginning of July 1990, reaching a high of $25 1/4 on July 11. However, during August and September, the stock price began to decline; VeriFone's stock closed at $14 7/8 on Friday, September 14, 1990.
 
 
 4
 On Monday, September 17, 1990, VeriFone CEO Hatim Tyabji issued a press release announcing that:
 
 
 5
 Business in our core financial markets and in our rapidly expanding international markets continues to exceed our expectations, but not sufficiently to offset shortfalls in other areas. The Petroleum business unit, as well as the emerging businesses of our North American division, including Electronic Benefits Transfer and Multi-Lane Retail, as well as Petroleum are behind plan.
 
 
 6
 VeriFone also revealed that slow growth had caused it to implement "cost containment measures and expansion controls" to minimize sharply increasing expenditures.
 
 
 7
 Immediately following VeriFone's September 17 disclosure, the market price of VeriFone stock fell 13.4% to close at $12 7/8. The next day, September 18, 1990, VeriFone stock dropped further, to $7 5/8. On September 20, 1990, a class action lawsuit was initiated on behalf of VeriFone shareholders by named plaintiffs Minichino, Steen, Marchesi, and the Steinbergs. A similar class action complaint was soon filed by Halkin. The two actions were consolidated, and a First Amended Complaint ("Amended Complaint") was filed on March 22, 1991 on behalf of a class composed of those persons who purchased VeriFone common stock in VeriFone's IPO through September 18, 1990, the day following the press release by VeriFone which precipitated the trading price decline.[1]
 
 
 8
 Shareholders allege seven causes of action under Secs. 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. Secs. 77k and 77l ; Sec. 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and the SEC's Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 promulgated thereunder; Sec. 20A of the Exchange Act as amended, 15 U.S.C. Sec. 78t-1; California Corporations Code Sec. 1507; and state law torts of fraud and negligent misrepresentation. The securities fraud claims against VeriFone and the Underwriters are based on alleged material misstatements in, and omissions from: (1) VeriFone's March 13, 1990 registration statement and prospectus; (2) VeriFone's Forms 10-Q for the first and second quarters of 1990, filed with the SEC in May and August 1990; (3) press releases issued by VeriFone in April and July 1990 announcing the company's first and second quarter 1990 earnings; and (4) stock analysts' reports issued by Dean Witter and Morgan Stanley in April, May, and July 1990.
 
 II
 
 9
 We review a district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) de novo. Oscar v. University Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n. 2 (9th Cir.), cert. denied, 479 U.S. 1009, 107 S.Ct. 650, 93 L.Ed.2d 705 (1986).[2]
 
 III
 
 10
 A. VeriFone's IPO Documents, SEC Filings, and Press Releases
 
 
 11
 Each of the federal securities laws invoked by the shareholders requires a plaintiff to allege that the defendants were responsible for a misrepresentation in, or material omission from, a stock prospectus, registration statement, or other document.[3] In re Lyondell Petrochemical Co. Sec. Litig., 984 F.2d 1050, 1052 (9th Cir.1993). Section 10(b) prohibits any person from using or employing any "manipulative or deceptive device" in connection with the sale of a security. Rule 10b-5, 17 C.F.R. Sec. 240.10b-5, promulgated under section 10(b), forbids the making of "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading...." Section 11 provides that any signer, officer of the issuer, or underwriter may be held liable for a registration statement containing "an untrue statement of a material fact or omitt[ing] to state a material fact ... necessary to make the statements therein not misleading...." 15 U.S.C. Sec. 77k(a). Similarly, Sec. 12(2) establishes liability for those persons who sell a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading...." 15 U.S.C. Sec. 77l.
 
 
 12
 Shareholders argue that the district court improperly "lumped" their claim under Sec. 11 of the '33 Act with their claims under Sec. 12(2) of the '33 Act and Sec. 10(b) of the '34 Act (and Rule 10b-5 thereunder). Citing Kronfeld v. Trans World Airlines, Inc., 832 F.2d 726, 730-31 n. 8 (2nd Cir.1987), cert. denied, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988), they maintain that a "duty to disclose" analysis is irrelevant with respect to Sec. 11, and that alleging the "existence of a material omission is, by itself, sufficient to state a prima facie claim under section 11." Contrary to shareholders' characterization, we interpret the district court's discussion of a "duty to disclose" as bearing on whether they adequately allege a material misrepresentation or omission, a question common to all statutory provisions at issue in this case. Lyondell, 984 F.2d at 1052; accord Kronfeld, 832 F.2d at 730-31 n. 8 (reading the district court's opinion, speaking of "facts as to which there was a duty to disclose," as "finding the alleged omissions immaterial as a matter of law"). Accordingly, our central inquiry is whether a reasonable investor would have been misled about the nature of his investment in VeriFone stock. See Durning v. First Boston Corp., 815 F.2d 1265, 1268 (9th Cir.), cert. denied, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987).
 
 
 13
 * Shareholders argue that VeriFone and the Underwriters concealed adverse facts in order to complete VeriFone's public offering. Their pleading, however, has to do with a failure to disclose a forecast of future sales and revenue.
 
 
 14
 Paragraph 21 sets out the undisclosed adverse facts and trends about which shareholders complain.[4] It avers that before the public offering, VeriFone and the Underwriters learned of "the following adverse material facts and trends, which were not publicly known":
 
 
 15
 p 21(a): "Sales growth to VeriFone's core market segment ... had slowed substantially ... to revenue growth rates projected to be less than 17-18% for fiscal year 1990."
 
 
 16
 p 21(b): "Unit sales ... had materially declined ... and [were] projected to show little, if any, growth for fiscal year 1990."
 
 
 17
 p 21(c): "VeriFone's historical sales channels ... were showing little growth in potential revenue...."
 
 
 18
 p 21(d), (e): "VeriFone was forced to directly market its products to new markets [and] ... VeriFone's direct marketing sales force ... had no reasonable basis to predict VeriFone's ability to sell its product in these [new] markets."
 
 
 19
 p 21(f): "A material portion of VeriFone's future sales...."
 
 
 20
 p 21(g): "VeriFone's Petroleum/Convenience market was saturated, and ... VeriFone's sales to this market segment would plummet unless VeriFone was able to convince customers in this market to upgrade to more complex and costly systems...."
 
 
 21
 p 21(h): "Revenue growth for the next few quarters ... was dependent ... upon the potential sale...."
 
 
 22
 p 21(i): "VeriFone's revenues for the first half of fiscal year 1990 would be...."
 
 
 23
 p 21(j): "Sales to the petroleum market were not expected by defendants to grow over the next few years."
 
 
 24
 (Emphases added). These alleged nondisclosures are, in substance, failures to make a forecast of future events. Put another way, what the complaint avers is that VeriFone omitted to state the "fact" that future prospects may not be as bright as past performance. Absent allegations that VeriFone withheld financial data or other existing facts from which forecasts are typically derived, the alleged omissions are not of material, actual facts. Therefore, the forecasts need not have been disclosed, and the failure to make the omitted forecasts did not render other statements that were made misleading. See Lyondell, 984 F.2d at 1053; see also Convergent Technologies, 948 F.2d at 516; Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1221 (9th Cir.1980) ("[T]he SEC does not require a company to disclose financial projections.").[5]
 
 
 25
 Nor do we believe that VeriFone's listing of 52 prominent customers in the prospectus was misleading. Shareholders argue that the list was misleading, in that VeriFone failed to disclose an actual fact, that it did not have current orders with these customers. However, we read the listing, which appears in a discussion of VeriFone's historical marketing strategy, as simply a compilation of past and current customers that connotes nothing material about the status of existing or prospective orders.
 
 
 26
 In summary, because the shareholders fail to allege non-disclosed material facts which could have rendered the defendants' assessment of VeriFone's prospects for the future any more accurate or reliable than a forecast based on information then available to the market, shareholders' Amended Complaint does not state a claim under the federal securities laws.
 
 2
 
 27
 Shareholders also rely on allegations that VeriFone failed to comply with the mandate of SEC Regulation S-K, Item 303, 17 C.F.R. Sec. 229.303(a)(3)(ii), and various Stock Exchange rules, to show a violation of Sec. 10(b) and Rule 10b-5. We disagree.
 
 
 28
 Lyondell and Convergent Technologies rejected similar arguments. While Sec. 229.303(a)(3)(ii) provides that "known trends or uncertainties" be disclosed in certain SEC filings, another SEC regulation, which expressly addresses forecasts, states that forward-looking information need not be disclosed. 17 C.F.R. Sec. 229.303(a), Instruction 7; see Lyondell, 984 F.2d at 1053.
 
 
 29
 Shareholders' contention that disclosure was compelled by the reporting and disclosure requirements which govern members of the New York Stock Exchange, the American Stock Exchange, and the National Association of Securities Dealers is similarly baseless. It is well established that violation of an exchange rule will not support a private claim. Jablon v. Dean Witter & Co., 614 F.2d 677, 680-81 (9th Cir.1980) (Securities Exchange Act does not provide a private cause of action for violation of stock exchange rules, NASD rules); see also Carrott v. Shearson Hayden Stone, Inc., 724 F.2d 821, 823 (9th Cir.1984). Shareholders' argument that a violation of those rules violates Sec. 10(b) or Rule 10b-5 amounts to the same thing. Mihara v. Dean Witter & Co., 619 F.2d 814, 823-24 (9th Cir.1980), upon which shareholders rely, is distinguishable. Mihara involved the use of New York Stock Exchange Rule 405 to help establish that the defendant had the requisite scienter--i.e., that the defendant securities broker did not "know his customer." Id. By contrast, the issue here is whether the shareholders sufficiently allege material misstatements or omissions, not whether misleading information was disseminated knowingly or recklessly. We decline to hold that a violation of exchange rules governing disclosure may be imported as a surrogate for straight materiality analysis under Sec. 10(b) and Rule 10b-5.[6]
 
 
 30
 B. Morgan Stanley and Dean Witter Analysts' Projections
 
 
 31
 Three analysts' reports issued by Morgan Stanley and Dean Witter contain earnings estimates and other predictions which shareholders allege lacked a "reasonable basis."[7] Liability for the Underwriters' forecasts attaches under Rule 10b-5 only if at the time of publication "one of three implied factual assertions is inaccurate: '(1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement.' " Hanon v. Dataproducts Corp., 976 F.2d 497, 501 (9th Cir.1992) (quoting In re Apple Computer Sec. Litig., 886 F.2d 1109, 1113 (9th Cir.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990)). The fact that the prediction proves to be wrong in hindsight does not render the statement untrue when made. Marx v. Computer Sciences Corp., 507 F.2d 485, 489-90 (9th Cir.1974).
 
 
 32
 The "facts" upon which shareholders proceed are the same as those that VeriFone and the Underwriters allegedly failed to disclose, that is, forward-looking information which projected a future for VeriFone less promising than that conveyed by estimates in the analysts' reports. From this, shareholders infer that VeriFone and the Underwriters must have known that inconsistent predictions displayed in the published reports lacked a reasonable basis. It follows from Lyondell, however, which held that failure to disclose existing internal projections that had been shown to the company's lender and were less favorable than the prospectus was not an omission of a material fact, that the failure to disclose non-existing internal forecasts is not a material factual omission that renders forward-looking statements misleading. 984 F.2d at 1052-53; accord Convergent Technologies, 948 F.2d at 516.[8]
 
 IV
 
 33
 Relying on both its determination that the shareholders failed to allege an actionable material omission and Mirkin v. Wasserman, 12 Cal.App.4th 927, 278 Cal.Rptr. 729 review granted and opinion withdrawn, 282 Cal.Rptr. 840, 811 P.2d 1024 (1991),[9] the district court dismissed with prejudice shareholders' state law causes of action for fraud, negligent misrepresentation, and violation of California Corporations Code Sec. 1507.[10] VeriFone, 784 F.Supp. at 1488. Shareholders argue that because the Mirkin opinion was withdrawn pending California Supreme Court review, and thus cannot be cited, this court must reverse the district court's dismissal of their state law claims. See Robards v. Gaylord Bros., Inc., 854 F.2d 1152, 1155 (9th Cir.1988) (cases granted review by California Supreme Court may not be cited for any proposition).
 
 
 34
 Even if the California Supreme Court were to reverse Mirkin, or if the Mirkin rule applies and shareholders had pled reliance sufficiently,[11] their state law claims fail because they have not identified an actionable misstatement of fact or omission. See Continental Airlines, Inc. v. McDonnell Douglas Corp., 216 Cal.App.3d 388, 402-04, 264 Cal.Rptr. 779, 784-86 (1989) (under California law, causes of action for fraud and negligent misrepresentation must allege that defendant was responsible for a false representation of material fact).
 
 V
 
 35
 The Amended Complaint alleges that in excess of 719,900 shares out of the 3.9 million shares of VeriFone common stock comprising the March 13, 1990 IPO were sold by officers and directors of VeriFone while in possession of material nonpublic information, and that Frank J. Caufield, a VeriFone director, sold nearly 500,000 shares while in possession of material nonpublic information. Shareholders argue that the district court incorrectly concluded that their Amended Complaint failed to state a claim under the Insider Trading and Securities Fraud Enforcement Act, Sec. 20A of the Exchange Act of 1934, as amended, 15 U.S.C. Sec. 78t-1. The district court determined that an insider may only violate Sec. 20A when an independent violation of the securities laws has occurred. VeriFone, 784 F.Supp. at 1488-89. The court further concluded that even if such a violation were properly alleged in this case, the named representative shareholders failed to allege that they personally had traded "contemporaneously" with VeriFone insiders and lacked standing to bring suit on behalf of those members of the purported class who did meet the "contemporaneous" trading requirement. Id. at 1488-90.
 
 
 36
 Shareholders concede that if they have failed to allege an actionable independent underlying violation of the '34 Act, they similarly cannot maintain a claim under Sec. 20A. Accordingly, in light of our conclusion that no violation of the '34 Act has been stated, the Sec. 20A claim was properly dismissed.
 
 VI
 
 37
 The district court dismissed the entire Amended Complaint with prejudice.[12] VeriFone, 784 F.Supp. at 1491. On appeal, shareholders do not argue that leave to amend should have been granted, nor do they point to facts which might be added to save their complaint. Accordingly, the district court did not abuse its discretion in dismissing this action with prejudice.
 
 
 38
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 39
 The majority holds at pages 868-69 of its opinion that the shareholders' amended complaint does not allege a failure to disclose adverse information regarding past or present performance, but rather only a failure to disclose predictions of future revenue. I disagree. I believe that many of the statements in the complaint upon which the majority relies pertain to past or present occurrences. That they also form the basis for predicting future performance is irrelevant. It is the past or present events that the shareholders have a right to complain of in a case involving the statutory provisions at issue here--and complain of them they surely did:
 
 
 40
 Sales growth to VeriFone's core market segment of retail merchant automation (which accounted for more than 76% of the Company's revenues in 1989) had slowed substantially....
 
 
 41
 Unit sales to VeriFone's core market segment of retail merchant automation had materially declined....
 
 
 42
 VeriFone's historical sales channels ... were showing little growth in potential revenue based upon order rates or unit sales.
 
 
 43
 VeriFone was forced to directly market its products to new markets as a result of the slow down in growth in its core business, and VeriFone's inability to find resellers for these markets.
 
 
 44
 VeriFone's direct marketing sales force had little or no experience in marketing VeriFone's products to these new market segments, was meeting substantial resistance and long lead times between sales proposals and customer response, and had no reasonable basis to predict VeriFone's ability to sell its product in these markets.
 
 
 45
 VeriFone's Petroleum/Convenience market was saturated....
 
 
 46
 Amended Complaint at p 21(a-e, g) (emphasis added).
 
 
 47
 The majority holds that these allegations concern only future events. It is true that the facts complained of, if true, are relevant to predicting VeriFone's future performance. However, that is not surprising. The purpose of a public offering is to persuade investors to bet on a company's future performance. Future revenue is the ultimate interest of every potential investor. What the majority overlooks is that it is only after evaluating past and present performance that investors bet--or decline to bet--on future performance. By focusing solely upon the portion of each allegation that may inform the reader as to future performance, the majority ignores the fact that the allegations are founded in the past and the present.
 
 
 48
 I think it clear that the shareholders' complaint is not limited to allegations of a failure to forecast future events, as the majority states. Rather, the complaint expressly alleges a failure to disclose facts concerning VeriFone's past and present performance. Because the shareholders properly alleged that the defendants concealed adverse facts in their public offering, I would reverse the judgment of the district court. Accordingly, I dissent.
 
 
 
 [1]
 During the six-month interval between the shareholders' filing of their original complaints and the Amended Complaint, VeriFone and the Underwriters unsuccessfully sought a stay of discovery. Thus, both before and after filing the Amended Complaint, the shareholders had the opportunity to conduct discovery
 
 
 [2]
 VeriFone and the Underwriters provided the district court with all of the documents in which the allegedly false and misleading statements were contained. VeriFone, 784 F.Supp. at 1476
 
 
 [3]
 This is a "fraud on the market" case. Consequently, the shareholders need not allege that they themselves actually relied on any particular misrepresentation or omission. Rather, the shareholders need only plead that they relied on the integrity of the price of VeriFone stock as established by the market, "which in turn is influenced by information or the lack of it." In re Convergent Technologies Sec. Litig., 948 F.2d 507, 512 n. 2 (9th Cir.1991)
 
 
 [4]
 These alleged omissions are realleged and amplified elsewhere, particularly in pp 41 and 67
 
 
 [5]
 Shareholders' allegations that VeriFone's future was "known" to VeriFone and the Underwriters is further undercut by p 67(l ) of the Amended Complaint. That paragraph alleges "[t]hat VeriFone lacked sufficient and adequate financial and accounting controls to permit the accurate or timely recording of bookings revenues and profits or to permit management to accurately monitor, determine or forecast the Company's financial performance [.]" (Emphasis added)
 
 
 [6]
 Since the Amended Complaint was properly dismissed by the district court as to VeriFone, we need not address the merits of the Underwriters' efforts to avoid liability for VeriFone's IPO documents, SEC filings, and press releases. Similarly, the shareholders' failure to allege an independent, primary securities law violation on the part of VeriFone moots the shareholders' derivative claims against the Underwriters for conspiracy and aiding and abetting
 
 
 [7]
 The shareholders also contend that the price set for the VeriFone IPO was itself a prediction because the defendants "relied on the future prospects of the Company and its industry in setting the price." However, the shareholders never specifically designate the VeriFone IPO price as an actionable misrepresentation in their Amended Complaint
 
 
 [8]
 Given this conclusion, we need not address VeriFone's argument that since VeriFone neither adopted nor disseminated the reports, VeriFone cannot be charged for any material misstatements or omissions which the reports contain
 
 
 [9]
 Mirkin held that "California law does not permit the application of the fraud-on-the-market theory of reliance to causes of action based on fraud and deceit, negligent misrepresentation, or violation of section 1507." Verifone, 784 F.Supp. at 1488 (internal quotation marks omitted)
 
 
 [10]
 The shareholders have abandoned their appeal on their claim under section 1507. See Collins v. San Diego, 841 F.2d 337, 339 (9th Cir.1988) (claims not addressed in appellant's brief are deemed abandoned)
 
 
 [11]
 While Mirkin is not good law, the Underwriters argue that the rule articulated in Mirkin is the best predictor of how the California Supreme Court would resolve the question of whether a plaintiff may substitute the fraud-on-the-market theory for allegations of individual reliance. See, e.g., Colaprico v. Sun Microsystems, Inc., [1991-92 Transfer Binder] Fed.Sec.L.Rep. (CCH) p 96,495, at 92,182, 1991 WL 330923 (N.D.Cal.1991) ("The Mirkin opinion is well-reasoned and thoroughly researched. If faced with this issue, the California Supreme Court is likely to follow Mirkin, and hold that plaintiffs' reliance on a sound stockmarket is not the functional equivalent of reliance on the misrepresentations themselves."). Given our disposition, it is unnecessary for us to express a view on this point
 
 
 [12]
 The district court initially afforded shareholders 30 days to file an amended complaint with respect to the analysts' reports. VeriFone, 784 F.Supp. at 1491. After the 30-day period had expired, counsel informed the court that shareholders had no additional facts to allege, and that no amended pleading was anticipated. Id. Accordingly, the district court dismissed this action with prejudice in its entirety. Id