**In re SYBASE, INC. SECURITIES LITIGATION.**

**This Document Relates to All Actions.**

**No. C–95–1144 WHO.**

United States District Court,
N.D. California.

April 29, 1999.

William S. Lerach, Patrick J. Coughlin, Randi D. Bandman, Henry Rosen, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Lena C. Chang, Los Angeles, CA, for plaintiffs.

Bruce G. Vanyo, Boris Feldman, Nina F. Locker, Ignacio E. Salceda, Rebecca L. Epstein, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants Mark B. Hoffman, Robert S. Epstein, and Sybase, Inc.

## MEMORANDUM DECISION AND ORDER

ORRICK, District Judge.

In this securities fraud "forecasting" case brought against Sybase, Inc. ("Sybase"), a California corporation and a leading developer of relational database

management system software, having its principal place of business in Emeryville, California, and certain Sybase's top officers and directors,[1] sixteen plaintiffs represented by Milberg Weiss Bershad Hynes & Lerach, a nationally recognized plaintiffs' securities firm, brought this action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and the rules promulgated thereunder found in Rule 10b–7 of the Securities and Exchange Commission Rule. 17 C.F.R. § 240.10b. In their class action complaint, plaintiffs allege that Sybase and certain of its officers and executives made false and misleading statements about its products and issued false earnings forecasts about the financial condition of Sybase from November 14, 1994 to April 3, 1995.

After five years of intensive investigation, during which more than 400,000 documents were produced, 100 subpoenas issued and, as a result, depositions without number taken, plaintiffs produced their evidence of fraud, consisting of the following flimsy and frivolous bits of evidence, most of it inadmissible, which may be briefly summarized as follows:

1. Hearsay statements taken from analysts' reports that contain allegedly false and misleading statements made by Sybase executives and directors. Based on the statements attributed to Sybase executives and directors in these analysts' reports, plaintiffs maintain that Sybase defrauded investors by failing to disclose that:

a. There were serious problems with Sybase's flagship product, SQL Server 10 (both bugs and a lack of connectivity to other computer products);

b. Sybase was losing customers due to poor customer service and its failure to introduce new products to meet its customers' demands;

c. Sybase had inadequate staffing levels for its sales force; and

d. Sybase's overly optimistic financial forecasts were undermined by internal budget calculations and information from the sales force that its First Quarter 1995 revenue projections would be impossible to meet.

2. Statements, contained in Sybase's own press releases and transcripts of conference calls that its officials had with investors, of Sybase managers declaring that one of Sybase's software products, the Navigation Server, would be shipped in December and was production quality and that the its System 10 products were poised for continued growth.

3. Statements by employees affirming their belief that Sybase would be able to achieve its revenue projections for First Quarter 1995.[2]

Sybase has now moved for summary judgment. The motion is granted in its entirety, and judgment is entered in favor of Sybase, Inc., for the reasons set forth hereinafter.

I.

This case had its genesis in Sybase's stock drop on April 3, 1995. On that day, after the close of the market, Sybase made a public announcement that, instead of the strong First Quarter 1995 results it had forecast growth of approximately an additional $0.28 in earnings per share and full year 1995 earnings growth of approximately $1.85 per share, Sybase would earn only $0.03 to $0.06 per share in the First Quarter 1995. After this announcement, Sybase's stock fell $16 per share from a closing price of $39 ¼ per share on April 3, 1995 to approximately $23 per share on April 4, 1995, representing a decline of approximately forty percent. This suit

---

1. The individual defendants in this action are Mark B. Hoffman, Robert S. Epstein, David P. Peterschmidt, and Kenneth A. Goldman. All defendants will be referred to collectively as ("Sybase" or "defendants").

2. Sybase's fiscal quarters correspond roughly to calendar quarters.

was filed on April 4, 1995, the day after Sybase's announcement. Plaintiffs seek to hold Sybase liable for allegedly false statements that Sybase made to the public regarding its revenue forecasts and earnings predictions, as well as general statements that Sybase made about its economic strength and its products.

Far from inflating revenue forecasts, the Court finds that, contrary to plaintiffs' assertions, Sybase responsibly lowered its internal forecasts figures when making representations to outside parties when it became clear that Sybase would not be able to achieve its revenue goals. Further, the guidance that Sybase gave to investors was, throughout most of the First Quarter 1995, lower than its internal forecasts. The Court, therefore, finds that there is no evidence from which a reasonable jury could find that Sybase's public forecasts lacked a reasonable basis when made.

As for plaintiffs' allegation that Sybase misled the market about its computer software products, the Court finds that plaintiffs have offered not one iota of admissible evidence to show that Sybase ever made the statements at issue. Furthermore, these statements, even if presumed admissible, would still not give rise to a Rule 10b–5 violation because Sybase's product problems had already been widely documented throughout industry trade magazines and reports.

## II.

### A.

■ Rule 10b–5 of the Securities Exchange Act of 1934 makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading[.]" 17 C.F.R. § 240.10b–5(b). To prove a violation of Rule 10b–5, plaintiffs must show "(1) a misrepresentation or omission of a material fact, (2) reliance, (3)

scienter, and (4) resulting damages." *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir.1996). Forward-looking projections and general expressions of optimism can be actionable under the securities laws. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989). A projection or statement of belief does not give rise to a 10b–5 violation if: (1) the statement is truly believed; (2) there is a reasonable basis for the belief; and (3) the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement. *Id.*

In order to prove that defendants misled the market concerning Sybase's expectations regarding the First Quarter 1995, Ninth Circuit law requires that plaintiffs prove that: (1) the forecast was not genuinely believed; (2) there was not a reasonable basis for that belief, or (3) the speaker was aware of undisclosed facts tending to seriously undermine the accuracy of the forecast. *Id.*

### B.

#### 1.

■ The Court first begins with the insufficiency of the evidence that plaintiffs presented to the Court to sustain their burden of showing that Sybase made any of the statements alleged. As this Court noted in *In re Cirrus Logic Securities Litigation*, 946 F.Supp. 1446, 1468–69 (N.D.Cal.1996), analyst reports are inadmissible hearsay when offered for the purpose of establishing what Sybase actually told analysts. Plaintiffs' attempt to prove their case by introducing countless analyst reports containing Sybase's alleged fraudulent statements is, without more, plainly contrary to law. (*See* Pls.' Ex. A, Defs.' False Statements, Statements 1–8, 10–13, 16–18.) The Court notes, however, that analyst reports and notes may fall within the "catchall" hearsay exception of Rule 803(24) of the Federal Rules of Evidence "when the notes of several parties who

participated in the conversation each contain a reference to the statements allegedly made by the company executive." *In re Cirrus Logic,* 946 F.Supp. at 1470 (citations omitted).

After examining the evidence, the Court finds that plaintiffs have offered sufficient corroboration of Sybase's statements made to analysts in only two out of the fourteen hearsay statements that they contend are actionable.[3] These statements, corroborated by contemporaneous notes taken by analysts, are:

1. Statement 1, in which Sybase senior management expressed optimism about Sybase's revenue growth in 1995 following its merger with Peoplesoft, and stated that it was "comfortable" with street estimates of $1.85 earnings per share for 1995 on November 14, 1994; and

2. Statement 6, where Sybase senior management told analysts that current business was robust and that the Navigation Server would connect to IBM, Sun and HP platforms by mid-year, and that Sybase would be able to connect to SAP and Peoplesoft systems in 1995. (Pls.' Ex. A, Defs.' False Statements, at 1, 4.)

2.

Moreover, even assuming that each of the nineteen statements that plaintiffs attribute to Sybase are admissible as evidence, the Court finds that none of them actionable, because they are neither false nor misleading, or undermined by undisclosed adverse information.

■ First, with respect to plaintiffs' allegation that Sybase made false statements to the public concerning the alleged "bugs" and problems with Sybase's products, the evidence shows Sybase's statements, assuming they were made, are not actionable because they were already known to investors. Thus, defendants could not have concealed from the market that which was already known.

In a fraud-on-the-market case like this, "an omission is materially misleading only if the information has not already entered the market." *In re Convergent Techs. Sec. Litig.,* 948 F.2d 507, 513 (9th Cir.1991) (citing *In re Apple Computer Sec. Litig.,* 886 F.2d at 1114). "If the market has become aware of the allegedly concealed information, 'the facts allegedly omitted by the defendant would already be reflected in the stock's price' and the market 'will not be misled.'" *Id.* (quoting *In re Apple Computer Securities Litig.,* 886 F.2d at 1114).

In this case, Sybase's product issues were amply reported by industry analysts in numerous publications.[4] Thus, the

---

**3.** For listing of hearsay statements, *see* Defs.' Response to Pls.' Chart of Allegedly False Statement: Statements 1–6 (made in Nov. 1994); Statements 9 (made Dec. 22, 1994, with the exception of Sybase's own press release); Statements 10–13 (made in Jan. 1995); Statements 15 (made Feb. 27, 1995); Statements 16–18 (made in Mar. 1995).

Sybase admits making only two statements that eventually reached the market. (*See* Defs.' Ex. Response to Pls.' Chart of Allegedly False Statements: Statement 8, in which Sybase senior management declared that Navigation Server is production quality on December 2, 1994; Statement 14—Sybase's letter to its shareholders informing them that Sybase was poised for growth and that during 1994 it continued to increase its sales force). The Court finds that it has no proof that Sybase employee Mitchell Kertzmann's March 20, 1995 statement that he believed that it was possible for Sybase to achieve its results with-

in the expected range ever entered the market. (*See* Defs.' Response to Pls.' Chart of Allegedly False Statements: Statement 19, at 11.)

**4.** *See* Defs.App. of Evid. in Supp. of Mot. for Summ.J., Ex. 588, at H & Q1190 ("System 10 lacks … key functionality that cater to the needs of major application software vendors."); Ex. 828 at DL000063 (Donaldson, Lufkin & Jenrette report dated Sept. 19, 1994 acknowledging that "Sybase is not currently competitive on large-scale parallel systems, as Sybase's database does not scale well past four CPUs"); Ex. 829 (Montgomery Securities report dated Aug. 30, 1994 noting that System 10 currently does not scale past 4–6 processors); Ex. 835 (Kidder Peabody & Co. report dated Nov. 11, 1994 stating "[w]e estimate that Sybase has lost $20 million in revenue because of the absence of a PeopleSoft port….").

statements concerning Sybase's alleged product problems are not actionable as a matter of law, because they were known to the market.

■ Second, the Court finds that plaintiffs' allegation that Sybase issued false and misleading earnings predictions is without merit and unsupported by the evidence. It is clear that Sybase generated countless budget summaries and reports as a way of tracking its financial condition. Sybase's various internal budget forecasts often yielded different numbers, because different managers and executives used different types of data and field information to compile these figures. Of all the internal budgets that it generated, Sybase maintains that its official internal forecast was contained in the Yellow Sheet internal budget summary.[5] Plaintiffs have done nothing to controvert this contention, instead only charging that Sybase should have used other budget summaries that are, in plaintiffs' view, more accurate.

The securities laws are designed to prevent fraud, and are not designed to punish business errors or mistakes in judgment. Here, the Court has no evidence that Sybase's reliance on the Yellow Sheets was in anyway fraudulent. The evidence shows that Sybase's reliance on the Yellow Sheets was reasonable, and that its system of internal budgeting in general had worked in the past. In the years preceding this lawsuit, Sybase had achieved or substantially achieved the figures in its previous Yellow Sheet forecasts. (Peterschmidt Decl. at 6.)

In fact the evidence belies plaintiffs' assertion that Sybase behaved recklessly or fraudulently when giving guidance to analysts about the its budget projections. On January 17, 1995, Sybase revised its budget and reduced the North American sales revenue budget for the First Quarter from $94 million to $85.5 million. (Joint Statement of Undisputed Facts ¶ 11.) Sybase also cautioned analysts that the Powersoft dilution would reduce the First Quarter 1995 earnings from two to three cents per share. (Nyrop Decl. ¶ 11.) During Sybase's January 1995 conference call, Ms. Nyrop informed analysts that Sybase was "comfortable" with $0.27 earnings per share. (Id. at ¶ 12.) At that time, Sybase's Yellow Sheet forecast for Sybase-only revenue and earnings (excluding Powersoft) was $0.33 per share, which is lower than the guidance given analysts. (Id.)

Finally, as the end of the First Quarter 1995 drew nearer, Sybase further reduced its internal budgets, Mr. Peterschmidt and Gattuso lowered the revenue forecast reported in the Yellow Sheet to $243 million, including $75 million for North American Sales. (Peterschmidt Decl. ¶ 63 & Ex. 724; Gattuso Decl. 45.)[6] The Yellow Sheet also reflected a revised earnings forecast of $0.27 earnings per share, which was the guidance that Nyrop had given analysts in three months earlier in January 1995. (Ex. 724 at SYB012035.)

After a thorough review of all of the evidence, the Court rejects plaintiffs' invitation to second guess Sybase's elaborate forecasting system. Plaintiffs ask the Court to choose among Sybase's various forecasting report (i.e. Yellow Sheets, Operation Reviews, Morning Call reports) to determine which one was deemed most accurate and then determine whether Sybase should have relied on that report to

---

5. The Yellow Sheet was built on information obtained from all layers of Sybase: the fields sales force, the sales vice presidents, and senior sales management. The information gathered in the Yellow Sheet forecasts were confirmed and updated by numerous other forecasting tools, such as Sybase's Monday morning conference call, Critical Path Reports, SFSI Global Deal Reports, and other tracking devices.

6. At the hearing, the Court denied plaintiffs' countermotion to strike portions of the declarations of Epstein, Gattuso, Goldman, Hoffman, Peterschmidt, Mandelbaum, and Skorupa, finding that the statements that these declarants offered stating that they heard no objections from Sybase's sales force concerning the budget established for First Quarter 1995, finding that their statements were not hearsay.

the exclusion of contradictory or inconsistent reports. In the absence of any fraud, Sybase's decision to use the Yellow Sheets as the basis for determining its official forecast is a decision that it is entitled to make under the federal securities laws. As a general rule, companies are not required to disclose internal forecasts. *In re Convergent Techs. Sec. Litig.,* 948 F.2d at 516; *In re VeriFone Sec. Litig.,* 11 F.3d 865, 869 (9th Cir.1993) ("Absent allegations that VeriFone withheld financial data or other existing facts from which forecasts are typically derived ... the forecasts need not have been disclosed....") Here, Sybase had no obligation to reveal to the public all of its myriad financial budgets. As the Ninth Circuit stated in *In re Convergent Technologies Securities Litigation:* "A company 'need not detail every corporate event, current or prospective....' The securities laws do not require management to 'bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking.'" 948 F.2d at 516 (quoting *Marx v. Computer Sciences Corp.,* 507 F.2d 485, 491 (9th Cir.1974), and *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 448–49, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). In the absence of any information undermining the very foundation of the Yellow Sheets, the Court cannot conclude that Sybase's misled the market by failing to make available its field forecasts, simply because they contained less sanguine projections about its future. Plaintiffs cannot prevail as a matter of law by simply second-guessing Sybase's budget-

ing system with the benefit of 20–20 hindsight. There being no proof of fraud, the Court finds that no material issue of fact remains for 'a jury to decide regarding plaintiffs' allegation that Sybase defrauded the market by issuing false earnings forecasts.

In sum, the Court finds no evidence in the record to support plaintiffs' allegation that Sybase deceived the market by failing to disclose material information about the company.[7] "[P]laintiffs' entire case is based on hindsight, forgetting that the securities laws do not adopt this perspective." *In re Cypress Semiconductor Sec. Litig.,* 891 F.Supp. 1369, 1381 (N.D.Cal. 1995). Here the Court finds that plaintiffs have failed to raise a material issue of fact showing that the alleged product problems plaguing Sybase establish that their budget forecasts and general statements of optimism lacked a reasonable basis. No reasonable jury could find that any of Sybase's statements were false or misleading. Given this finding, the Court need not reach the issues of scienter or the individual defendants' liability.

### III.

Accordingly,

IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted in its entirety. Judgment is entered for the defendants.

---

7. The Court struck the declaration of Harold Teubner, on plaintiffs' motion. At the hearing on defendants' motion for summary judgment, the Court granted leave to plaintiffs to take Teubner's deposition by April 23, 1999. The parties requested that they be given until May 4, 1999 to take Teubner's deposition because of scheduling conflicts, and the Court obliged.

The Court finds here, however, that summary judgment is warranted despite any favorably testimony that Teubner may offer to support plaintiffs' case. The Court further notes that plaintiffs' motion to prevent defen-

dants from introducing Teubner's declaration to support their motion for summary judgment was made because the parties had agreed in October 1998 that Teubner's deposition would not be taken prior to the parties' motion(s) for summary judgment. Both parties nevertheless reserved the right to take Teubner's deposition before trial. Based on this agreement, neither party can claim that it is unfairly prejudiced because the Court rendered its decision without Teubner's deposition, because this is what the parties originally contemplated through their prior agreement.