Hannah **KOMANOFF** and Charles Komanoff, Plaintiffs,

v.

**MABON, NUGENT & CO.** and Mabon Securities Corp., Defendants.

No. 93 Civ. 2309 (LBS).

United States District Court, S.D. New York.

April 27, 1995.

Fensterman & Fensterman, Lake Success, NY (Howard Fensterman, Stephen Ziegler, of counsel), for plaintiffs.

Gage & Buschmann, New York City (Robert M. Buschmann, Margaret J. Marrin, of counsel), for defendants.

## OPINION

SAND, District Judge.

Plaintiffs bring various federal securities claims and state common law claims against their former stockbroker. Defendants have moved to dismiss this case for failure to plead fraud with particularity, pursuant to Federal Rule of Civil Procedure 9(b), and for failure to state a claim, pursuant to Rule 12(b)(6). In the alternative, defendants move for partial summary judgment. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## BACKGROUND

Plaintiff Hannah Komanoff is an eighty-year old resident of New York state who describes herself as having had "an extraordinarily active career in local politics." Amended Complaint ¶ 14. Charles Komanoff, her son, manages a consulting practice and is also a New York resident. Plaintiffs are the wife and son, respectively, of the late Isadore Komanoff, a stock broker who managed their investments until his death in 1986.

Defendant Mabon, Nugent & Co. ("Mabon") was during the relevant period a limited partnership created under the laws of the State of New York, with its principal place of business in New York. Mabon was a registered securities broker and dealer with the State of New York and the Securities and Exchange Commission, as well as a member of the New York Stock Exchange and the National Association of Securities Dealers.

Defendant Mabon Securities Corp. ("Mabon Securities") is a New York corporation that purchased certain assets from Mabon in April of 1991. Mabon Securities, according to plaintiffs, assumed all of the liabilities of Mabon at the time of the purchase. Amended Complaint ¶ 7. Defendants deny that Mabon Securities assumed any liabilities related to this action. Transcript of Proceedings Dated Feb. 9, 1995 ("Tr.") at 4–5.

Frederica Miceli, during the relevant time period, was a registered stock broker in the employ of defendant Mabon. Ms. Miceli, who is also the daughter of plaintiff Hannah Komanoff and the sister of plaintiff Charles Komanoff, is not a party to this action.

Bernard Weiner, during the relevant time period, was apparently both the personal accountant for plaintiff Hannah Komanoff and, unbeknownst to plaintiffs, a partner at the firm that served as Mabon's accountant. Plaintiffs allege, and defendants deny, that Mr. Weiner acted as Mabon's agent and representative in dealing with and giving advice to plaintiffs. Amended Complaint ¶ 8.

Plaintiffs' central allegations are as follows. In 1986, sometime around the death of Isadore Komanoff, plaintiffs formed a relationship with Mabon whereby the latter was to act as plaintiffs' stockbroker for investments in securities. Plaintiffs each opened discretionary securities accounts with Mabon. Plaintiffs allege that they "were totally unsophisticated concerning stock market investments in general and the intricacies and risks of short-term trading techniques in particular." Amended Complaint ¶ 13. They assert that Mabon consequently had "complete control" over the accounts, and plaintiffs "neither participated in, nor approved any securities transactions." Id. ¶ 12.

Plaintiffs allege that several times in 1986 and 1987 they informed Mabon, through Ms. Miceli and Mr. Weiner, that their investment needs and objectives "called for long-term investments, primarily in income-producing securities, and protection and conservation of principal." Id. ¶¶ 15–19. Instead, according to plaintiffs, Mabon willfully and recklessly proceeded to adopt for plaintiffs "trading methods which were inconsistent with said investment needs and objectives." Id. ¶ 21. These trading methods "had a very high probability of producing substantial losses to Plaintiffs" and did in fact produce such losses. Id.

Plaintiffs also allege a pattern of churning on the part of Mabon lasting from 1986

through the closing of plaintiffs' accounts.[1] They contend that in a "continuous course of action and concerted plan" intended to convert to the benefit of Mabon the funds in plaintiffs' accounts, Mabon "effected thousands of trades in the Accounts for the purpose of generating commissions and profits" for Mabon. *Id.* ¶ 23. These trades "were of a high overall frequency ... and included a high frequency of same day trading and in and out trading." *Id.* ¶ 24.

Plaintiffs allege that overall commissions during this period totalled between $754,353 and $851,000 as to Charles Komanoff (approximately 56.3% of the average equity balance in his account) and between $2,819,000 and $3,836,000 as to Hannah Komanoff (approximately 38.3% of the average equity balance in her account). They contend that the turnover ratios in plaintiffs' accounts were as high as 31.2 times per year for Charles Komanoff and 25.7 times per year for Hannah Komanoff.

Plaintiffs also allege that Mabon deliberately made misrepresentations to plaintiffs and concealed facts from them in order to persuade them to establish and maintain their accounts with Mabon. Prior to the opening of plaintiffs' accounts, for example, defendants allegedly concealed from plaintiffs the fact that Mr. Weiner was not only Hannah Komanoff's accountant, but also Mabon's accountant, thus posing a conflict of interest. Later, in response to questioning by plaintiffs as to the status of their accounts, Ms. Miceli and Mr. Weiner purportedly misinformed plaintiffs that their monthly account statements did not accurately reflect account balances. In addition, plaintiffs allege that Ms. Miceli by letter dated August 15, 1989, misrepresented to plaintiffs that, when "pooling" the trades of its customers, it would allocate such trades at the end of each day. In fact, contend plaintiffs, losses were allocated after the fact and disproportionately to plaintiffs' accounts.

Defendants have offered as exhibits two letters, sent by Mabon to Hannah Komanoff in May and December of 1988, which advised plaintiffs of "realized and unrealized losses" in their accounts, warned them that their "trading strategy" involved "a high degree of leverage and risk," urged them to consider taking "a more conservative trading approach," and requested that Hannah Komanoff confirm her "understanding and appreciation of the concerns" expressed in the letters. Exhibits 3 & 4 to Affidavit of Annette Nazareth Dated Jan. 5, 1994 ("Nazareth Aff."). The December letter specifically requested Hannah Komanoff to "release and discharge" Mabon and its employees from responsibility for the losses described in the letter. Ex. 4 to Nazareth Aff. Plaintiffs concede that Hannah Komanoff signed both of these letters. Amended Complaint ¶ 46. However, they allege that she did so as a result of misrepresentations on the part of Ms. Miceli and Mr. Weiner that she was "doing all right," that "everything is all right with your account," and that she "should not worry about anything." *Id.* ¶¶ 44–45.

According to plaintiffs, the losses in their accounts due to defendants' wrongful actions amounted to approximately $1,064,278.00 for Charles Komanoff and $7,922,100.00 for Hannah Komanoff. This constituted a total loss of $8,986,378.00 out of plaintiffs' combined investment of $14,768.312.00.

## DISCUSSION

### A. *Rule 10b–5 Claims*

Plaintiffs allege that defendants have violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5. Amended Complaint ¶ 1. Defendants respond that any claims under these provisions are time barred. Alternatively they argue that we should dismiss these claims pursuant to Fed. R.Civ.P. 9(b) for failure to plead fraud with particularity.

#### 1. *Statute of Limitations*

The parties agree that the applicable statute of limitations for Rule 10b–5 claims is the

---

1. " 'Churning' is a synonym for 'overtrading' ... and simply refers to the excessive rate of turnover in a controlled account for the purpose of increasing the amount of commissions." *Armstrong v. McAlpin*, 699 F.2d 79, 80 (2d Cir.1983) (citations omitted).

one-and-three-year rule set forth by the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 361, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991) (applying the period specified in §§ 9 and 18 of the 1934 Act). *See also Walsche v. First Investors Corp.* 981 F.2d 649, 653 (2d Cir.1992). Under this rule, a Rule 10b–5 claim must be brought within one year after discovery of the facts constituting the violation and within three years of such violation. *Lampf,* 501 U.S. at 359–60, 111 S.Ct. at 2780.

### a. Charles Komanoff

■ Although the Amended Complaint does not specify when Charles Komanoff's account with Mabon was closed, defendants have provided evidence that this account was closed in May or June of 1988 and that the parties conducted no further transactions after this date. Nazareth Reply Aff. ¶ 4 and Ex. 1 (Charles Komanoff's final account statement). Plaintiffs brought this lawsuit in April 1993, more than three years after the date that defendants claim Mr. Komanoff closed his account. Since plaintiffs have not provided any evidence that Mr. Komanoff closed his account later than June 1988 or that he traded with Mabon after this date, we conclude for purposes of defendants' summary judgment motion that Mr. Komanoff's Rule 10b–5 claim is barred by the statute of limitations.

To avoid the three-year bar, Mr. Komanoff urges that the running of that limitation period should be tolled due to fraudulent concealment on the part of defendants that prevented plaintiffs from discovering defendants' wrongdoing. Mr. Komanoff offers no relevant caselaw in support of this proposition, and we reject it in light of the *Lampf* decision.[2] In *Lampf,* the Supreme Court held that the three year cutoff for Section 10(b) claims is absolute, reasoning that "the equitable tolling doctrine is fundamentally inconsistent with the 1–and–3–year structure." *Lampf,* 501 U.S. at 363, 111 S.Ct. at 2782 (explaining that "[t]he 3–year limit is a peri-

od of repose inconsistent with tolling" and "can have no significance ... other than to impose an outside limit.") (citations omitted). Despite plaintiffs' protestations to the contrary, we believe that this reasoning holds even when the plaintiff's failure to bring suit within three years is due to fraudulent concealment by the defendant. *See In re Integrated Resources, Inc.,* 851 F.Supp. 556, 566–67 (S.D.N.Y.1994) (stating that the *Lampf* Court held that the 3–year rule "is absolute and cannot be tolled under the 'fraudulent concealment' or 'discovery' doctrines.").

### b. Hannah Komanoff

■ Defendants concede that Hannah Komanoff closed her account in October 1990, bringing her April 1993 lawsuit within the three-year period of *Lampf. See* Tr. at 3. Nevertheless, argue defendants, Ms. Komanoff's Rule 10b–5 claims should be time-barred under *Lampf's* one-year prong, which requires suits to be brought within one year after discovery of the facts constituting the violation. *See Lampf,* 501 U.S. at 361, 111 S.Ct. at 2781. Discovery under this prong includes not only actual notice, but also constructive and inquiry notice. *See Dodds v. Cigna Secs., Inc.,* 12 F.3d 346, 349 (2d Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994).

Defendants argue that Ms. Komanoff's acknowledged receipt of monthly statements from Mabon, *see* Amended Complaint ¶ 32–33, as well as written confirmations of each trade, *see id.* ¶ 32, were sufficient to put her on inquiry notice of any alleged churning by defendants. In addition, defendants point to the two letters from Mabon, which Ms. Komanoff concedes that she received and signed in 1988, warning her about losses in her account. *See* Amended Complaint ¶ 46. These letters, defendants argue, should also have put Ms. Komanoff on inquiry notice as to any fraudulent activity by Mabon, thus barring her from bringing her Rule 10b–5 claim in 1993.

---

**2.** Plaintiffs cite only a law review article criticizing the Supreme Court's *Lampf* decision, *see* Lyman Johnson, *Securities Fraud and the Mirage of Repose,* 1992 Wis.L.Rev. 607 (1992), and one pre-*Lampf* case, *see Bergen v. L.F. Rothschild,* *Unterberg, Towbin,* 685 F.Supp. 1, 3 (D.D.C. 1988), that we deem superseded by *Lampf. See* Plaintiffs' Memorandum in Opposition ("Plaintiffs' Mem.") at 54–59.

Defendants rely heavily on *Appel v. Kidder, Peabody & Co.,* 628 F.Supp. 153 (S.D.N.Y.1986), in which Judge Weinfeld held that plaintiffs' churning claims were time barred because plaintiff admitted receiving confirmation slips and monthly reports and therefore had a duty of inquiry as to these claims. *Id.* at 158. We believe, however, that *Appel* is distinguishable from this case in that *Appel* involved a plaintiff who did not review the daily confirmations and month-end statements that defendants sent him. *See id.* at 157–58; *see also Lebow v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 86 C 8196, 1987 WL 7808, at *3 (N.D.Ill. Mar. 12, 1987) (noting that in *Appel,* "the plaintiff did not check his confirmation slips for almost four years."). As Judge Weinfeld wrote, "[p]laintiffs may not close their eyes and say they do not see what is perfectly obvious." *Appel,* 628 F.Supp. at 158; *see also Goodman v. Shearson Lehman Brothers, Inc.,* 698 F.Supp. 1078, 1082 (S.D.N.Y. 1988) (dismissing churning claims where plaintiff "received confirmations of the trades that occurred in her accounts as well as account statements on a regular basis [but] never examined a single one.").

Ms. Komanoff, by contrast, contends not that she failed to read the statements, but that they contained misleading "errors" and "irregularities," *see* Plaintiffs' Memorandum in Opposition ("Plaintiffs' Mem.") at 34; Amended Complaint ¶ 48, and were of such "bulk and complexity," *see* Amended Complaint ¶ 13, that a person of ordinary intelligence would not have been put on inquiry notice by these statements that defendants were churning or otherwise committing fraud. *See Armstrong v. McAlpin,* 699 F.2d 79, 87 (2d Cir.1983) ("[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises....") (quoting *Higgins v. Crouse,* 147 N.Y. 411, 416, 42 N.E. 6 (N.Y.1895)).[3] Although defendants argue that the variety of investments listed in these monthly statements, as well as the frequency of the writ-

ten confirmations, should as a matter of law have alerted a reasonable investor to the possibility of excessive trading activity, we disagree. The courts have frequently emphasized the special nature of excessive trading claims and the "added experience and knowledge necessary to ascertain a pattern of churning." *Kravitz v. Pressman, Frohlich & Frost, Inc.,* 447 F.Supp. 203, 211 (D.Mass. 1978). For example, in *Lang v. Paine, Webber, Jackson & Curtis, Inc.,* 582 F.Supp. 1421 (S.D.N.Y.1984), the court held that churning claims must "be treated differently" from other securities claims:

> A claim of churning is based upon an excessive volume of discretionary trading in an account over a period of time. Discovery of the fraud requires not only knowledge that the trades have occurred, but also an awareness that the rate of trading activity is excessive in light of the dollar value of the account and the client's investment objectives.

*Lang,* 582 F.Supp. at 1428; *see also Nesbit v. McNeil,* 896 F.2d 380, 384 (9th Cir.1990) ("[A] finding of churning, by the very nature of the offense, can only be based on a hindsight analysis of the entire history of a broker's management of an account and of his pattern of trading that portfolio, in comparison to the needs and desires of an investor."); *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202, 1209–10 (9th Cir.1970) (while confirmation slips were sufficient to bar plaintiff from complaining about specific purchases of stock, they were not sufficient to put her on notice that the trading of her account was excessive).

We also find important the special nature of the relationship between plaintiff and her broker, Frederica Miceli. That Ms. Komanoff placed extra trust in Ms. Miceli because she was her daughter makes it more reasonable, we believe, for Ms. Komanoff to have failed to discern the alleged wrongdoing by the defendants. *See Lang,* 582 F.Supp. at 1428 ("Determining the precise point at which an investor has enough information to

---

**3.** Insofar as plaintiff argues that this case is distinguishable from *Appel* in that Ms. Komanoff was less sophisticated than the plaintiff in *Appel,* we reject that argument. The Court of Appeals

for the Second Circuit has made it clear that "[t]he test as to when fraud should with reasonable diligence have been discovered is an objective one." *See Armstrong,* 699 F.2d at 88.

ascertain that the level of trading in his account is excessive ... [may] depend, to some extent, upon the nature of the relationship between the broker and his client."); *see also Kravitz*, 447 F.Supp. at 211 (plaintiff not estopped from claiming ignorance with respect to churning where she became close friends with her broker, dated him on a regular basis, and came to rely on him for advice on a wide variety of matters).

As for the two letters that Ms. Komanoff received and signed in 1988 and that defendants argue should have put her on notice as to any wrongdoing, we find that these letters neglected to disclose several facts material to Ms. Komanoff's churning claim, including the alleged extent of turnover in her account and the amount of commissions taken as a result thereof. *Compare* Exs. 3 & 4 to Nazareth Aff. *with* Amended Complaint ¶¶ 26–27.[4] Moreover, there is evidence that both Ms. Miceli and Bernard Weiner, defendants' accountant,[5] advised her to ignore the warnings in these letters. *See* H. Komanoff Aff. ¶¶ 17–18.[6] Overall, although a jury considering all of the evidence may find that the monthly statements, confirmations, and letters put Ms. Komanoff on inquiry notice as to defen-

dants' alleged wrongdoings, we are unable to reach such a conclusion as a matter of law at this stage of the proceedings.

### 2. *Rule 9(b)*

Alternatively, defendants ask us to dismiss plaintiffs' Rule 10b–5 claims pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Second Circuit has held that complaints alleging fraudulent violations of Section 10(b) and Rule 10b–5 must satisfy this requirement. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).

■ Although we recognize that the Rule 10b–5 claims in the Amended Complaint could be more specific, we nevertheless find that they satisfy the particularity requirement of Rule 9(b).[7] For example, with respect to plaintiffs' churning claims, such claims are pleaded with sufficient particularity "if facts are alleged from which it may be inferred that an account has been excessively traded in contravention of an investor's ex-

---

**4.** For example, Ms. Komanoff alleged that commissions charged to her account ranged from $108,000 to $127,000 per month, totalling as much as $3,836,000. *See* Amended Complaint ¶ 26. Defendant's letters, by contrast, advised plaintiff that commissions charged to her account between May and December of 1988 amounted to only $326,890. Ex. 4 to Nazareth Aff.

**5.** We find there to be a genuine issue of material fact as to whether Mr. Weiner was Mabon's agent or representative during the relevant time period or was part of a conspiracy by Mabon to defraud plaintiffs. *See* Amended Complaint ¶¶ 8, 43 (stating that Mr. Weiner acted as the accountant for both Hannah Komanoff and Mabon during this period and that defendants failed to disclose this fact to plaintiffs).

Defendants argue, and plaintiffs apparently concede, that even if Mr. Weiner was Mabon's agent at the time he made his allegedly fraudulent statements, plaintiffs were unaware that he was such and therefore "could not have relied on any statements of Mr. Weiner as being the statements of an agent of defendants." Defendants' Reply Memorandum Dated Dec. 6, 1994 ("Defendants' Reply Mem.") at 27; Tr. at 23, 32 (statements of Mr. Fensterman). It follows, argue defendants, that Mabon cannot be held liable in

connection with Mr. Weiner's statements to plaintiffs. We do not believe that one may validly make this assertion as a matter of law in the present posture of this case. Regardless of whose interests plaintiffs believed Mr. Weiner to represent, he nevertheless allegedly was an agent of Mabon who defrauded plaintiffs with Mabon's knowledge and to Mabon's benefit.

**6.** For the same reasons, we do not believe that we can presently determine that Hannah Komanoff's signature on the December 1988 letter releases defendants, as they suggest, from liability in this case. *See Joint Venture Asset Acquisition v. Zellner*, 808 F.Supp. 289, 303 (S.D.N.Y. 1992) ("Under New York law, a release or waiver clause may be attacked and set aside, even if it is clear on its face, for substantive flaws in its execution, such as fraud in its inducement....."); *Parnes v. Mast Property Investors, Inc.*, 776 F.Supp. 792, 799 (S.D.N.Y.1991) (stating that "a party does not waive his or her right to bring a later legal action for fraud if that party had no knowledge of the alleged fraud at the time the release was signed.").

**7.** Under the same analysis, we find that plaintiffs' common law fraud claims also satisfy Rule 9(b), and we reject defendants' motion to dismiss these claims.

pressed goals for the purpose of generating commissions." *Nilsen v. Prudential–Bache Secs.,* 761 F.Supp. 279, 289 (S.D.N.Y.1991) (citing *Saxe v. E.F. Hutton & Co.,* 789 F.2d 105, 112 (2d Cir.1986)). The Amended Complaint states that Ms. Komanoff advised defendants of her investment objectives and that defendants overtraded her account in light of these objectives. *See* Amended Complaint ¶¶ 16–18, 23–29. It also alleges that defendants' sole purpose in this type of trading was generating commissions and that the turnover ratio in Ms. Komanoff's account was 25.7 times per year. *See id.* ¶¶ 26–27. We find that these allegations are sufficient to comply with the requirements of Rule 9(b).

As for Ms. Komanoff's other 10b–5 claims, a plaintiff pleading misrepresentation must specify:

> (1) precisely what statements were made in what documents or oral misrepresentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the context of such statements and the manner in which they misled the plaintiffs, and (4) what the defendants obtained as a consequence of the fraud.

*Moran v. Kidder Peabody & Co.,* 609 F.Supp. 661, 665 (S.D.N.Y.1985) (quoting *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (citations omitted)), *aff'd,* 788 F.2d 3 (2d Cir.1986). Ms. Komanoff, we believe, has met this standard. She makes reference in her Amended Complaint to specific fraudulent statements and the persons responsible for making them. *See, e.g.,* Amended Complaint ¶¶ 44–45, 59–60. Further, she refers to the time and context in which these alleged statements were made and defendants' incentives for making them. *See, e.g., id.* ¶¶ 44–46, 49–50, 62. This is therefore not a case where plaintiff's allegations "do no more than state generally that a fraud or misrepresentation was committed." *Moran,* 609 F.Supp. at 665 (dismissing complaint pursuant to Rule 9(b)).

Defendants also contend that we should dismiss Ms. Komanoff's Rule 10b–5 claims

pursuant to Rule 9(b) because the Amended Complaint fails to allege when she discovered the alleged churning or fraud. This date of discovery is relevant to the issue of whether Ms. Komanoff had actual notice of defendants' violations more than one year prior to the date that she brought her lawsuit and is therefore time barred from bringing her claims under *Lampf. See* 501 U.S. at 361, 111 S.Ct. at 2781. Although it is true that the Amended Complaint fails to allege the date of discovery, we do not believe that this omission is grounds for dismissing plaintiffs' claims under Rule 9(b). *See Sperber Adams Assocs. v. JEM Management Assocs. Corp.,* 90 Civ. 7405, 1992 WL 138344, at *2 (S.D.N.Y. June 4, 1992) (finding no requirement to affirmatively plead compliance with statute of limitations under Rule 10b–5); *Balsam v. Eastchester Fin. Corp.,* No. 90 C 2947, 1991 WL 41901, at *3 (E.D.N.Y. Mar. 20, 1991) (same); *see also Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993) (reasoning that a rule requiring plaintiffs in Rule 10b–5 suits to affirmatively plead compliance with statute of limitations "makes no sense"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994); *Commercial Insur. Co. v. Krain,* 843 F.Supp. 404, 407 (N.D.Ill.1994) ("A plaintiff's discovery of fraudulent behavior is clearly not one of the circumstances which 'constitutes' the fraud. As a result, Rule 9(b) simply does not apply...."); *cf. In re Chaus Secs. Litig.,* 801 F.Supp. 1257, 1270 (S.D.N.Y. 1992) (stating that it is "unclear" whether a failure to affirmatively plead compliance with the statute of limitations is grounds for dismissal under Section 10(b)). *But see Maywalt v. Parker & Parsley Petroleum Co.,* 808 F.Supp. 1037, 1050 (S.D.N.Y.1992) ("[T]o adequately plead § 10(b) violations, the plaintiff must aver compliance with the one year/ three year statute of limitations."). Since Ms. Komanoff has in any case subsequently stated in her affidavit that she discovered defendants' alleged wrongdoings within one year of the date she brought this action, we think it inappropriate to dismiss her Rule 10b–5 claims. *See Lampf,* 501 U.S. at 361, 111 S.Ct. at 2781.[8]

---

8. Ms. Komanoff states in her affidavit that "[s]ometime early in 1991," she sought assis-

## B. *Remaining Securities Claims*

Charles and Hannah Komanoff also bring several other securities claims against defendants. We address each of these remaining claims in turn.[9]

### Section 12(2)

■ Plaintiffs bring a claim under Section 12(2) of the Securities Act of 1933.[10] Amended Complaint ¶ 1. This provision gives buyers an express right of rescission against sellers who make material misstatements or omissions "by means of a prospectus." 15 U.S.C. § 77l. However, the Supreme Court recently held, in *Gustafson v. Alloyd Co.,* —— U.S. ——, ——, 115 S.Ct. 1061, 1073, 131 L.Ed.2d 1 (1995), that Section 12(2) extends only to initial public offerings of stock, and not to secondary market transactions. Since we read the allegations in plaintiffs' Amended Complaint as referring only to post-distribution transactions, and not to initial public offerings, we dismiss plaintiffs' Section 12(2) claims for failure to state a claim.[11]

### Section 29(b)

■ Plaintiffs next bring a claim under Section 29(b) of the Securities Exchange Act of 1934. Amended Complaint ¶ 1. This provision states, in relevant part, that:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void ...

15 U.S.C. § 78cc(b). It is clear from this statutory language that, under Section 29(b), "only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." *Zerman v. Jacobs,* 510 F.Supp. 132, 135 (S.D.N.Y.), *aff'd,* 672 F.2d 901 (2d Cir.1981). Because plaintiffs have not alleged anywhere in their Amended Complaint that the contracts entered into with defendants were "inherently violative" of the 1934 Act or the regulations thereunder, we dismiss plaintiffs' Section 29(b) claims for failure to state a claim. *See Slomiak v. Bear Stearns & Co.,* 597 F.Supp. 676, 681–82 (S.D.N.Y.1984) (rejecting plaintiff's request for rescission under Section 29(b), because plaintiff failed to allege "that the customer agreements [at issue] were themselves unlawful.").

### Rule 15c–1

■ Plaintiffs also bring a claim under Securities Exchange Commission Rule 15c–1, 17 C.F.R. § 240.15c–1, regulating the activities of broker-dealers involved in over-the-counter transactions. Amended Complaint ¶ 1. However, the Court of Appeals for the Second Circuit has already held that the statutory basis for Rule 15c, Section 15(c)(1)

---

tance in investigating certain Internal Revenue Service deficiencies being asserted against her. Although Ms. Komanoff is unclear as to the length of the investigation, she asserts that it was in the course of this investigation "that it was concluded ... that the wrongs alleged in the Amended Complaint had in fact taken place" and that her initial Complaint was filed "immediately after" this conclusion was reached. *See* H. Komanoff Aff. at ¶¶ 24–28.

**9.** In their Memorandum in Opposition, plaintiffs raise for the first time claims pursuant to Sections 5 and 12(1) of the Securities Act of 1933. *See* Plaintiffs' Mem. at 82. These claims were not pled in the Amended Complaint, and we do not consider them here, without prejudice to a motion to amend the Complaint to contain these claims.

**10.** Although plaintiffs refer in their Amended Complaint to Section 12(2) of the "Securities and Exchange Act of 1934," a provision that does not exist, we assume that they in fact intended to rely on Section 12(2) of the Securities Act of 1933.

**11.** Plaintiffs argue, in a letter brief to the Court, that certain allegations in the Amended Complaint in fact relate to a public offering and therefore are sufficient to sustain a Section 12(2) claim even after *Gustafson.* In particular, plaintiffs argue that defendants, by means of false communications, issued a "security" to plaintiffs, namely "an interest in a pool, that is, a group of discretionary accounts managed by Defendant Mabon in regard to which Defendant Mabon (through Miceli) allocated security purchases and sales after the fact...." Plaintiffs' Letter Dated March 23, 1995 at 2. We decline to consider this contention in light of the fact that it has not heretofore been set forth clearly in plaintiff's Amended Complaint or Opposition papers. *See supra* note 9.

of the 1934 Securities Exchange Act, does not create a private right of action. *Asch v. Philips, Appel & Walden, Inc.,* 867 F.2d 776, 777 (2d Cir.), *cert. denied,* 493 U.S. 835, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989); *see also Epstein v. Haas Secs. Corp.,* 731 F.Supp. 1166, 1180 (S.D.N.Y.1990). Therefore, we dismiss plaintiffs' Rule 15c claims for failure to state a claim.

*Rule 10b–16*

■ Next, we turn to plaintiffs' claims under Securities Exchange Commission Rule 10b–16. Amended Complaint ¶ 72.[12] This provision makes it unlawful for a broker to extend credit to a customer in connection with a securities margin transaction without disclosing to the customer the terms and conditions by which costs of credit will be imposed.[13] Rule 10b–16 contains no express private right of action for aggrieved customers against their brokers. Although the only federal appellate courts to consider whether customers have an implied right of action under Rule 10b–16 have determined that they do, *see Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 950 (3d Cir.), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 532 (9th Cir.1984); *Liang v. Dean Witter & Co.,* 540 F.2d 1107, 1113 n. 25 (D.C.Cir.1976), the question is an open one in this Circuit. *See Zerman v. Ball,* 735 F.2d 15, 23 (2d Cir.1984) (raising but not reaching the issue); *see also Zerman v. Melton,* 735 F.2d 751, 752 (2d Cir.1984) (affirming on other grounds district

court's decision finding no private right under Rule 10b–16), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985); *compare Metzner v. D.H. Blair & Co.,* 689 F.Supp. 262, 267 (S.D.N.Y.1988) (finding a private right of action) *and Slomiak,* 597 F.Supp. at 681 (same) *with Establissement Tomis v. Shearson Hayden Stone, Inc.,* 459 F.Supp. 1355, 1361 (S.D.N.Y.1978) (finding no private right).

This Court, however, need not decide the issue of whether a private right of action exists under Rule 10b–16 because it finds that any claims brought under that rule in this case would be time barred. Assuming, *arguendo,* that plaintiffs could bring a claim under Rule 10b–16, we believe that the statute of limitations for such a claim would be the same one-and-three-year period applicable to private rights of action under Rule 10b–5. *See Lampf,* 501 U.S. at 361, 111 S.Ct. at 2781. Courts in this District that have found a private right under Rule 10b–16 have derived such a right from the Rule's connection to Section 10(b) of the Securities Exchange Act, the provision that is also the basis for the private right of action under Rule 10b–5. *See, e.g., Metzner,* 689 F.Supp. at 267 ("Permitting private plaintiffs who have been harmed by a violation of Rule 10b–16 to bring private damage suits furthers the goal of section 10(b).") (quoting *Angelastro,* 764 F.2d at 950); *Slomiak,* 597 F.Supp. at 680–81 ("Rule 10b–16, like Rule 10b–5, directly advances the purpose of § 10(b).") (quoting *Abeles v. Oppenheimer & Co.,* 597 F.Supp. 532, 536 (N.D.Ill.1983)); *see also*

---

**12.** Plaintiffs refer in Count I of their Amended Complaint to "Section 10b–16" of the Securities Exchange Act of 1934, a provision that does not in fact exist. Amended Complaint ¶ 1. Assuming that plaintiffs actually intended to rely on Rule 10b–16, we ignore this reference to "Section 10b–16" and instead address the Rule 10b–16 claim contained in Count VII, *see id.* ¶ 72, which incorporates the allegations in Count I, *see id.* ¶ 67.

**13.** Rule 10b–16 provides, in relevant part, as follows:

(a) It shall be unlawful for any broker or dealer to extend credit, directly or indirectly, to any customer in connection with any securities transaction unless such broker or dealer has established procedures to assure that each customer:

(1) Is given or sent at the time of opening the account, a written statement or statements disclosing (i) the conditions under which an interest charge will be imposed; (ii) the annual rate or rates of interest that can be imposed; (iii) the method of computing interest; (iv) if rates of interest are subject to change without prior notice, the specific conditions under which they can be changed; (v) the method of determining the debit balance or balances on which interest is to be charged and whether credit is to be given for credit balances in cash accounts; (vi) what other charges resulting from the extension of credit, if any, will be made and under what conditions; and (vii) the nature of any interest or lien retained by the broker or dealer in the security or other property held as collateral and the conditions under which additional collateral can be required.... 17 C.F.R. § 240.10b–16.

*Ferreri v. Mainardi,* Civ. A. No. 88–3954, 1989 WL 11071, at *4 (E.D.Pa. Feb. 7, 1989) (applying the one-and-three-year limitations period to all "10b claims" and dismissing all such claims including a Rule 10b–16 claim).

Assuming a claim could be brought under Rule 10b–16(a)(1), such a claim would accrue at the time a broker extended credit to a customer without having sent the required written statements.[14] In this case, plaintiffs apparently allege that Mabon unlawfully extended them credit when it opened their margin accounts in 1986. Amended Complaint ¶¶ 11, 68. This act took place more than three years prior to 1993, when plaintiffs brought their action in federal court. Although plaintiffs also contend that Mabon caused their margin debt to increase significantly between 1986 and 1988 without complying with the Rule, this alleged violation also took place more than three years before this action was commenced.[15] We therefore dismiss any possible claims under Rule 10b–16 as time barred.

*Section 20(a)*

Finally, plaintiffs bring claims under Section 20(a) of the Securities Exchange Act of 1934. Amended Complaint ¶ 1. That provision states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is

liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

■■■■■ To establish a § 20(a) claim, "a plaintiff must allege (1) a primary violation, (2) scienter, and (3) control of the primary violator by the defendant." *Robbins v. Moore Medical Corp.,* 788 F.Supp. 179, 188 (S.D.N.Y.1992). Plaintiffs, however, have failed to make clear in their Amended Complaint exactly who the primary violators were that defendants are alleged to have controlled. Because plaintiffs have not properly pleaded the requirements of their Section 20(a) claims, we dismiss these claims pursuant to F.R.C.P. 9(b).[16]

## C. Common Law Claims

### 1. Breach of Contract

■■■■ Plaintiffs bring claims stemming from defendants' alleged violations of certain "Customers' Agreements" executed by the parties, which required defendants "to comply with the by-laws, rules and regulations" of the National Association of Securities Dealers ("NASD") and New York Stock Exchange ("NYSE"). Amended Complaint ¶ 66. In particular, plaintiffs argue that defendants breached these Customers' Agreements by violating NYSE Rule 405, sometimes referred to as the "know your customer" rule,[17] and Article III, Section 2 of the

---

**14.** Although we do not read the Amended Complaint as asserting claims under subdivisions (a)(2) or (b) of Rule 10b–16, we believe that any such claims would be similarly time barred.

**15.** Plaintiffs allege that "Defendant Mabon, in exercise of its control over Plaintiffs' accounts, caused Plaintiffs to incur huge increases in margin debt. With respect to Plaintiff, Hannah Komanoff, Defendant Mabon caused her margin debt to increase by approximately $5,930,000.00 in the month of May, 1987, and Defendant Mabon caused her margin debt to increase by approximately $7,061,000.00 in the month of October, 1987. With respect to Plaintiff, Charles Komanoff, Defendant Mabon caused the ratios of margin debt to equity in his account to exceed fifty (50%) per cent over numerous months during the period of June, 1986 through May, 1988." Amended Complaint at ¶ 71.

**16.** In addition, we dismiss Charles Komanoff's Section 20(a) claims because he has failed to state any primary violations under the security laws. *See Brown v. Hutton Group,* 795 F.Supp. 1317, 1324 (S.D.N.Y.1992) (describing it as "axiomatic" that "it is impossible to state a claim for secondary liability under Section 20 without first stating a claim for some primary violation of the security laws on the part of the controlled party."); *Dale v. Prudential–Bache Secs. Inc.,* 719 F.Supp. 1164, 1172 (E.D.N.Y.1989); *Goodman,* 698 F.Supp. at 1086.

**17.** Rule 405 provides, in relevant part:

> "Every member organization is required ... to (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every per-

NASD's Rules of Fair Practice, also known as the "suitability" rule.[18]

Defendants move this Court to dismiss these claims, pursuant to F.R.C.P. 12(b)(6), because "the Courts have repeatedly held there is no private right of action" for violations of either Rule 405 or Article III, Section 2.[19] Defendants' Memorandum Dated Jan. 5, 1994 ("Defendants' Mem.") at 83–87. We agree that the trend in this Circuit has been to find no such implied right. *See Dale v. Prudential–Bache Secs. Inc.*, 719 F.Supp. 1164, 1167–68 (E.D.N.Y.1989) (finding no implied private right of action under Rule 405); *Modern Settings, Inc. v. Prudential–Bache Secs., Inc.*, 602 F.Supp. 511, 515 (S.D.N.Y. 1984) (no private right under Rule 405 or Article III); *Jaksich v. Thomson McKinnon Secs., Inc.*, 582 F.Supp. 485, 501 (S.D.N.Y. 1984) (same); *Colman v. D.H. Blair & Co.*, 521 F.Supp. 646, 653 (S.D.N.Y.1981) (same); *cf. In re VeriFone Secs. Litig.*, 11 F.3d 865, 870 (9th Cir.1993) ("It is well established that violation of an exchange rule will not support a private claim"); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir.1990) (holding that "NYSE Rule 405 does not imply a private right of action cognizable in federal court."); *but see Bush v. Bruns Nordeman & Co.*, No. 72 Civ. 484, 1972 WL 360, at *2 (S.D.N.Y. Nov. 8, 1972) (stating that "[a] violation of Rule 405 creates a right enforceable by a private action for damages in some cases....").

However, we need not reach this issue because we read plaintiff's complaint not as asserting an implied right of action under Rule 405 or Article III, but rather as asserting a breach of contract claim. The Amended Complaint states that "Plaintiffs and De-

fendant Mabon executed Customers' Agreements which required that Defendant Mabon comply with [Rule 405 and Article III], and the failure of Defendant Mabon to comply with those by-laws, rules and regulations constitutes a material breach of the contractual agreement...." Amended Complaint ¶ 66. Assuming these allegations to be true, as we must for purposes of Rule 12(b)(6), plaintiffs have a breach of contract claim entirely independent from any possible claim existing under Rule 405 or Article III. *See Hofmayer v. Dean Witter & Co.*, 459 F.Supp. 733, 739 (N.D.Cal.1978) (where plaintiff alleged violations by defendant of certain rules of the Chicago Board of Trade and the Chicago Mercantile Exchange, plaintiff's claim "should properly have been separated into two counts, for it allege[d] both a breach of contract, resulting from a provision in the contract requiring [defendant] to abide by the rules of any exchange or market where transactions are executed, and an independent claim arising from the violation of the rules."). Therefore, we deny defendants' motion, pursuant to Rule 12(b)(6), to dismiss the claim in Count VI of plaintiffs' Amended Complaint.

## 2. *Negligence and Breach of Fiduciary Duty*

▮ Plaintiffs also bring negligence claims and breach of fiduciary duty claims, both of which defendants move to dismiss pursuant to Rule 12(b)(6). Defendants argue that the negligence claims should be dismissed because they involve, in part, the actions of Bernard Weiner, who defendants argue was not their agent or representative.[20] We agree with defendants that there

son holding power of attorney over any account accepted or carried by such organization.

Supervision of Accounts

(2) Supervise diligently all accounts handled by registered representatives of the organization.

**18.** Article III, section 2 of the NASD Rules of Fair Practice provides, in relevant part:

In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any,

disclosed by such customer as to his other security holdings and as to his financial situation and needs.

**19.** We read Defendants' Motion, as it relates to plaintiffs' claim in Count VI of its Amended Complaint, to be only a Rule 12(b)(6) motion and not also a motion for summary judgment. *See* Defendants' Memorandum Dated Jan. 5, 1994 ("Defendants' Mem.") at 83.

**20.** Plaintiffs allege that they were damaged as a proximate result of the negligence of Defendants' agents, as well as the negligence of Defendants themselves in "failing to properly supervise" these agents. Amended Complaint ¶¶ 51–56.

is some question as to whether Mr. Weiner was their agent during the time in question. *See supra* note 5. This factual dispute is irrelevant, however. Plaintiffs allege in their Amended Complaint that Mr. Weiner was defendants' agent, and this allegation is sufficient to defeat a motion brought pursuant to Rule 12(b)(6).[21]

As for plaintiffs' breach of fiduciary claims, defendants argue that while individual brokers may have a fiduciary duty to their customers, brokerage firms themselves do not. *See* Defendants' Reply Mem. at 67. However, the cases cited by defendants for this proposition do not in fact support it. *See Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 45 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Richardson,* 693 F.Supp. at 1456; *Van Alen v. Dominick & Dominick, Inc.,* 441 F.Supp. 389, 402 (S.D.N.Y.1976), *aff'd,* 560 F.2d 547 (2d Cir.1977). We therefore reject defendants' motion to dismiss plaintiffs' breach of fiduciary duty claims.[22]

**D. Plaintiffs' Claim for Punitive Damages**

 Plaintiffs seek punitive damages in the amount of $17,222,878.00. We agree with defendants that this demand for punitive damages must be dismissed insofar as it relates to plaintiffs' Rule 10b–5 claims. "It is well established that an award for punitive damages is not permissible for violations ... of Section 10(b) of the 1934 Act...." *Flaks v. Koegel,* 504 F.2d 702, 706 (2d Cir.1974); *see Polycast Technology Corp. v. Uniroyal, Inc.,* 792 F.Supp. 244, 277 (S.D.N.Y.1992); *Franks v. Cavanaugh,* 711 F.Supp. 1186, 1192 (S.D.N.Y.1989). However, we reject defendants' motion to dismiss plaintiffs' remaining claims for punitive damages. The Amended Complaint alleges that defendants intentionally defrauded an unsophisticated elderly widow and her son of their family savings; these allegations, we believe, are enough to meet the requirement in New York that defendants' behavior be "morally culpable or actuated by evil and reprehensible motives." *Bosio v. Norbay Secs., Inc.,* 599 F.Supp. 1563, 1572 (E.D.N.Y.1985).

**E. Claims Against Mabon Securities**

Plaintiffs' claims are directed not only against Mabon, plaintiffs' former broker, but also against Mabon Securities, an entity that purchased Mabon after plaintiffs closed their accounts with Mabon. *See* Amended Complaint ¶ 7. Plaintiffs assert that Mabon Securities in connection with this purchase "assumed all liabilities" of Mabon, including those alleged in this lawsuit. *Id.* Although defendants deny this assumption of liability, we do not believe we can resolve this issue as a matter of law on the facts before us. Because defendants have offered to file a separate motion for summary judgment specifically as to this issue, *see* Defendants' Reply Mem. at 47–48, we decline to dismiss plaintiffs' claims against Mabon Securities at this time.

## CONCLUSION

For the reasons set forth above, we grant defendants' motion in part and deny it in part. Plaintiffs' claims under Rules 10b–16 and 15c, Section 12(2) of the Securities Act of 1933, and Sections 20(a) and 29(b) of the Securities Exchange Act of 1934 are dis-

---

**21.** For the first time in their Reply Brief, defendants also suggest that plaintiffs' negligence claims should be dismissed because securities brokers owe no duty of care to their customers. *See* Defendants' Reply Mem. at 68–69. They cite for this proposition *Richardson Greenshields Secs. v. Mui–Hin Lau,* 693 F.Supp. 1445, 1456–57 (S.D.N.Y.1988) and *Mechigian v. Art Capital Corp.,* 612 F.Supp. 1421, 1429–31 (S.D.N.Y. 1985). Noting that *Richardson* and *Mechigian* appear to be distinguishable from this case, we decline to address that argument at this time.

**22.** Defendants also argue that plaintiffs' breach of fiduciary claims should be dismissed because

plaintiffs ratified defendants' actions. *See Altschul v. Paine, Webber, Jackson & Curtis, Inc.,* 518 F.Supp. 591, 594 (S.D.N.Y.1981) ("By failing to object to the course of trading in the accounts for approximately two years despite ample opportunity to do so, the Altschuls must be held to have ratified the transactions conducted on their behalf."). Defendants apparently rely on the two letters that Ms. Komanoff received and signed in 1988. *See* Amended Complaint ¶ 46. As indicated above, however, we do not believe that we can presently determine that Ms. Komanoff's signature on these letters constituted a ratification of defendants' alleged wrongdoings. *See supra* pp. 854–55 and note 6.

missed. We also dismiss the Rule 10b–5 claims of Charles Komanoff.

We defer action on defendants' request for costs and attorneys' fees until the conclusion of this litigation.

The parties are to confer with each other and advise the Court in writing on or before May 18, 1995 how much time will be required to complete all discovery and to submit a pre-trial order.

SO ORDERED.